UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

LAREDO DIVISION

UNITED STATES OF AMERICA,   )  CRIMINAL NO. 5:08-244-19
                          )
vs.                     )  August 4, 2008
                          )
EDUARDO IBARRA CARREON,   )
                          )
Defendant.           )
_____)

TRANSCRIPT OF RE-ARRAIGNMENT
BEFORE THE HONORABLE MICAELA ALVAREZ
DISTRICT COURT JUDGE

APPEARANCES:

For the Government:    JOSE ANGEL MORENO, AUSA
                      Office of US Attorney
                      P.O. Box 1179
                      Laredo, Texas 78042-1179

For the Defendant
  Eduardo I. Carreon:  JESUS DOMINGUEZ, ESQ.
                      201 W Hillside, Ste 17
                      Laredo, TX 78041

APPEARANCES CONT. ON 2ND PAGE

**THIS TRANSCRIPT HAS BEEN FURNISHED AT PUBLIC EXPENSE UNDER THE CRIMINAL JUSTICE ACT AND MAY BE USED ONLY AS AUTHORIZED BY COURT ORDER. UNAUTHORIZED REPRODUCTION WILL RESULT IN AN ASSESSMENT AGAINST COUNSEL FOR THE COST OF AN ORIGINAL AND ONE COPY AT THE OFFICIAL RATE. General Order 94-15, United States District Court, Southern District of Texas.**

Produced by mechanical stenography; computer-aided transcription

LETICIA O. RANGEL, CSR
1300 VICTORIA #3245
LAREDO, TEXAS 78040

<u>APPEARANCES CONT.</u>

For the defendant
      Raul Castillo:           AMADOR GUTIERREZ, JR., ESQ.
                                     1010 Juarez
                                     Laredo, TX 78040-4953

For the defendant
      Roberto Camacho:      JUAN RAMON FLORES, ESQ.
                                       P.O.Box 452167
                                     Laredo, TX 78045

For the defendant
      Jorge Rodriguez:      ANDRES REYES, ESQ.
                                     401 E Hillside
                                     Laredo, TX 78041

For the defendant
   Gustavo Fabian Chapa:     EUSTORGIO PEREZ, ESQ.
                                     1102 Scott, Ste 5B
                                     Laredo, TX 78040

For the defendant
      Rene Garcia:          MANUEL R FLORES, ESQ.
                                     1308 San Agustin
                                     Laredo, TX 78040

For the defendant
      Arturo Palencia:      OCTAVIO SALINAS, II, ESQ.
                                     213 W Village Blvd, Ste 6
                                     Laredo, TX 78041

1                    P-R-O-C-E-E-D-I-N-G-S

2              THE COURT:  This is Case Number 08-244,

3    the United States of America versus various defendants.

4    Let me have announcements from counsel so that we can

5    see who is here.

6                    MR. MORENO:  Jose Angel Moreno for the

7    government.

8                    MR. JAIME:  Eduardo Jaime for Juan

9    Adolfo Ramos, Your Honor.

10                   MR. SANCHEZ:  Fernando Sanchez for

11   Aurora Del Bosque.

12                   MR. MONTEMAYOR:  Javier Montemayor for

13   Andres Alfredo Hernandez.

14                   MR. SALINAS:  Octavio Salinas for Arturo

15   Palencia.

16                   MR. CZAR:  Jeffrey Czar present, Your

17   Honor, for Cardona.

18              THE COURT:  Okay.

19                   MR. FLORES:  Manuel Flores, Your Honor,

20   for Rene Garcia.

21                   MR. DOMINGUEZ:  Jesus Dominguez, Your

22   Honor, for Eduardo Carreon-Ibarra.  It's going to be a

23   plea, Your Honor.

24              THE COURT:  Okay.

25                   MR. GUTIERREZ:  Amador Gutierrez, Your

LETICIA O. RANGEL, CSR
1300 VICTORIA #3245
LAREDO, TEXAS 78040

```
 1    Honor.
 2                    THE COURT:  Okay.  Lost you somewhere
 3    here.
 4                    MR. DAVILA:  Chito Davila on behalf of
 5    Ricardo Guerrero, Your Honor.  There's an announcement.
 6                    THE COURT:  Okay.
 7                    MR. GUTIERREZ:  Amador Gutierrez, Your
 8    Honor, for Raul Castillo.
 9                    THE COURT:  Okay.
10                    MR. GUTIERREZ:  It's a plea.
11                    THE COURT:  A plea.
12                    MR. FLORES:  Juan Flores for Roberto
13    Camacho.  That's plea, also, Judge.
14                    MR. FIGUEROA:  Luis Figueroa, Your
15    Honor, for Jaime Miguel Diaz De Leon.  And he wants a
16    few additional days to discuss this matter with his
17    family for a plea, Your Honor.  That's what he's
18    requesting from me.
19                    THE COURT:  Okay.  Am I missing anybody
20    else?
21                    MR. REYES:  Andy Reyes on behalf of
22    Jorge Rodriguez.
23                    THE COURT:  Okay.
24                    MR. TELLEZ:  Jose Salvador Tellez II for
25    Raul Jasso, Jr.
```

```
 1            THE COURT:  Okay.  Everybody is
 2   accounted.  Okay.  Let me go down make sure because I
 3   don't think I got everybody that was going to be a
 4   plea.  I'm going to go down the list, and just tell me
 5   whether it is a plea or if you have some other
 6   announcement.  And I'm just going down the list as I
 7   have it in front of me.
 8            Cardona-Ramirez, was that a plea?
 9            MR. CZAR:  No, Your Honor, a trial.
10            THE COURT:  Trial, okay.
11         Richard Guerrero.
12            MR. DAVILA:  An announcement, Your
13   Honor.
14            THE COURT:  And the announcement is?
15            MR. MORENO:  Counsel was provided with a
16   birth certificate on Thursday.  We're checking out that
17   the defendant may have actually been a juvenile at the
18   time of the offense, and so we sort of have -- I'm
19   still talking to the folks at D.O.J. who handle the
20   juvenile adjudication, and they basically told us our
21   options are to dismiss the indictment and charge him as
22   a juvenile and have him transferred or we can dismiss,
23   file as a juvenile and request to be transferred to
24   those status or we can wait till November when he turns
25   21 and then prosecute him as an adult.  Once he turns
```

1   21, the Juvenile Justice Act does an application as

2   well.  According to them, that's what they're still

3   checking on.

4             THE COURT:  Okay.  And how much time do

5   you think you need to determine, first of all,

6   whether -- I guess the birth certificate, do you have

7   any question as to that?

8             MR. MORENO:  As far as I can tell from

9   all of the documentation we have, it should be correct.

10           THE COURT:  Okay.

11           MR. MORENO:  He was three or four months

12   away from being 18 at the time of the offense.

13           THE COURT:  It doesn't look like we can

14   go forward with him on the current schedule, in any

15   event.

16           MR. MORENO:  No, not today.  I should

17   know before the end of the week whether they're going

18   to process.  We have to make a decision about which

19   way--.

20           THE COURT:  To plead.

21           MR. MORENO:  We should proceed.

22           THE COURT:  Okay.  All right.  Roberto

23   Camacho.

24           MR. FLORES:  Plea, Judge.

25           THE COURT:  Okay. Arturo Palencia.

```
 1                    MR. SALINAS:  That will be a plea, Your

 2      Honor.

 3                    THE COURT:  Eduardo Carreon-Ibarra.

 4                    MR. DOMINGUEZ:  That's a plea, Your

 5      Honor.

 6                    THE COURT:  Rene Garcia.

 7                    MR. FLORES:  That will be a plea, Your

 8      Honor.

 9                    THE COURT:  Andres Alfredo Hernandez.

10                    MR. MONTEMAYOR:  Judge, that's an

11      announcement.  Mr. Hernandez has indicated to me at one

12      point about three weeks ago that he was interested in

13      pleading guilty.  I've seen the documents.  The factual

14      basis is not satisfactory to me or to him at this

15      point.  We're asking for a short extension, about a

16      week or so, to get all that squared away.  That's the

17      announcement.  I've conferred with the prosecution,

18      Your Honor.  They have -- as of Thursday, they had no

19      opposition because there were some other pending

20      matters that needed to be addressed as far as other

21      individuals who need to be brought in and whatnot.

22                    MR. MORENO:  I know what the issue is on

23      the factual basis.  I'll show him what we have and then

24      we'll see.

25                    THE COURT:  And so how much time do you
```

1  think we need?  What is our anticipated trial date for

2  this, Ms. Trevino?  I have it here somewhere.

3              MR. MORENO:  I don't believe we set a

4  date.

5              THE COURT:  But did I give you an

6  indication of what time -- where we would be looking

7  at, is what I'm trying to find out. I thought we had

8  set aside--.

9              MR. JAIME:  I don't think there was,

10 Your Honor, because at one point the government was

11 going to section off defendants.

12             THE COURT:  Okay.

13             MR. MORENO:  We were going to see how

14 many people were left and then decide how much time we

15 were going to--.

16             THE COURT:  Then let me come back to you

17 in a little bit.  Okay. Jaime Miguel Diaz De Leon.

18             MR. FIGUEROA:  Your Honor, it's

19 basically the same announcement.  We're asking for a

20 week to get together basically with the same facts as

21 Mr. Montemayor's client.

22             THE COURT:  Okay.  Raul Jasso Jr.

23             MR. TELLEZ:  Yes, Your Honor.  It's a

24 trial announcement.

25             THE COURT:  Trial announcement.  Okay.

1    Juan Adolfo Ramos.

2              MR. JAIME:  It's a trial, Your Honor.

3              THE COURT:  Gustavo Fabian Chapa.

4              MR. PEREZ:  It's a plea, Your Honor.

5              THE COURT:  Aurora del Bosque.

6              MR. SANCHEZ:  It's a trial, Your Honor.

7              THE COURT:  Raul Castillo.

8              MR. GUTIERREZ:  Plea, Your Honor.

9              THE COURT:  And Jorge Rodriguez.

10             MR. REYES:  Plea, Your Honor.

11             THE COURT:  Okay.  Okay.  Let me discuss

12    first, and we'll come to the pleas in a minute because

13    those will take a little while once we get started.

14          Let me discuss Cardona-Ramirez, Raul Jasso Jr.,

15    Juan Adolfo Ramos, Gustavo Fabian Chapa -- no, I'm sorry,

16    not Chapa, Del Bosque, those that are trial

17    announcements.  Okay.  We have discussed at some point in

18    time the possibility of having separate trials, depending

19    on the charges here, and I haven't gone back to look as

20    to each one of these particular defendants and the

21    charges that pertain to them.  But what are counsel's

22    thoughts as far as whether these defendants can be

23    tried -- and I have got one two, three, four trial

24    announcements:  Cardona-Ramirez, Jasso, Ramos.

25             MR. MORENO:  And Del Bosque.

```
 1                    THE COURT:  And Del Bosque.  So four
 2    trial announcements.
 3                    MR. MORENO:  If it's just going to be
 4    the four of them, I think my preference would be to try
 5    them all together.
 6                    THE COURT:  Well, I think part of it,
 7    though, is also has to do with the charges that pertain
 8    to each one of those.  If those charges are the same --
 9    I realize we have all one, all one large conspiracy.
10    But as far as the charges themselves, if they are all
11    interconnected factually, that would make some sense.
12    If they're clearly distinct set of facts as to each--?
13                    MR. MORENO:  Cardona is on most of the
14    charges in the indictment.
15                    THE COURT:  Okay.
16                    MR. MORENO:  And then the only one who
17    might be a little sort of off in the whole thing might
18    be Del Bosque because she's more of a minor role than
19    the rest of what happened towards the end of the
20    indictment.  But Jasso is on -- he's on four of the
21    homicides together with Cardona, and two or three of
22    the attempted homicides together with Cardona, plus;
23    and the related weapons charges that go with those.  So
24    he's on a different chunk of the indictment as Cardona.
25    And then Ramos is on the last--.
```

```
 1              THE COURT:  Quite a few of them.

 2              MR. MORENO:  Yes.  They're all involving

 3   four of those last -- the last of them, the last double

 4   homicides that occurred on April 2nd, pretty much

 5   everything after that.

 6              THE COURT:  Okay.

 7              MR. MORENO:  The attempted ones and the

 8   related guns and juvenile charges.  And the only issue

 9   as to a potential conflict would be Mr. Jaime who

10   represents a witness who would be the witness on the

11   very first, on Cardona's involvement, but his client is

12   not involved with him at all, so in my view, he

13   wouldn't have any reason to cross-examine his client,

14   but if it came to that being a difference between

15   trying them together or not, it would probably be just

16   useful because we have ten other people to do at a

17   time.

18              THE COURT:  Yeah.  And in looking at it,

19   I've got a breakdown of the charges.  I guess in

20   reviewing this, I agree that Del Bosque is the only one

21   that's really only involved in the initial conspiracy

22   and then one substantive count.  But other than that,

23   Jasso, Ramos, and Cardona overlap almost as to

24   everything also.  Any thoughts from counsel as to these

25   defendants?
```

1          MR. SANCHEZ:  Yes, Your Honor.  Fernando

2   Sanchez.  I represent Aurora Del Bosque.  My only

3   concern, and I have discussed this with Mr. Moreno, is

4   one of defendants had made a statement, and that

5   statement mentions my client.  I think it's Cardona who

6   is going to trial.  Before I filed a motion to sever,

7   which I did, and Mr. Moreno assured me that one of two

8   things, we'd either be separated, which apparently now

9   we may not be.  And in the event we were to be tried

10  together, that they would excise from the statement the

11  statements made in regards to my client.

12          MR. MORENO:  Which we would have to

13  undergo.

14          MR. SANCHEZ:  Other than that, we have

15  no problem being tried together.

16          THE COURT:  Okay.

17          MR. SANCHEZ:  As long as we can take

18  care of that.

19          THE COURT:  Okay.

20          MR. CZAR:  Yes, Your Honor.  On my

21  client, Your Honor, I believe he's down on 24 counts,

22  and I guess we would ask which one of those counts he

23  plans to try to prove up at trial or do we need to

24  get--.

25          MR. MORENO:  All of them.

1          THE COURT:  I would imagine he plans to

2    try all of them.

3          MR. CZAR:  That's fine, Your Honor.

4          THE COURT:  Okay.  All right.  Any

5    thoughts from anybody?

6          MR. TELLEZ:  Your Honor, my main thing

7    is that Mr. Cardona has many counts that are directly

8    related with his communications with Mr. Trevino in

9    Mexico.  There's a lot of information or a lot of

10   the -- obviously, contact with my client has six or

11   seven I guess.  If I'm not mistaken, anywhere between

12   six or eight total counts.  And the majority of the

13   information and the evidence that Mr. Moreno is going

14   to introduce at trial is going to go as far as

15   Cardona's direct relation with Mr. Trevino who is

16   allegedly the main gentleman in Mexico that brought

17   this whole alleged conspiracy together and use that to

18   tie against our clients.  And as far as what we're

19   indicted, or my client Jasso is indicted with Mr.

20   Cardona, that's fine.  But we're asking that -- if we

21   can keep I guess Mr. Cardona separate and separate him

22   from our group.

23          THE COURT:  And I don't think I

24   understand -- I mean I understand just a general

25   request to be tried separately, but.

LETICIA O. RANGEL, CSR
1300 VICTORIA #3245
LAREDO, TEXAS 78040

1      MR. TELLEZ:  If we go through the actual

2  overt acts--.

3      THE COURT:  Uh-hum.

4      MR. TELLEZ:  The overt acts of each and

5  every act of conspiracy are proved up, and we can go

6  through them and Your Honor would read just through the

7  indictment, that the majority of the acts that they're

8  using for the underlying basis for this indictment

9  pertains to Mr. Cardona.

10      THE COURT:  Okay.

11      MR. TELLEZ:  And a lot of the actions as

12  far as leader-organizer and all that, all that proof

13  goes to Mr. Cardona.  Now we have essentially my

14  defendant, my client, and then Mr. Sanchez's client who

15  is potentially related to my client, and I believe to

16  Mr. Jaime's client where the facts fit neatly to the

17  majority of the crimes that they allegedly committed

18  were done allegedly together.  Now Mr. Cardona brings

19  in a lot of other baggage that has nothing to do with

20  our clients.

21      THE COURT:  Well, but in that sense, I

22  mean the jury is instructed that they have to determine

23  each count as to each defendant separately.  If it's an

24  issue, because you talk about leader-organizer, if we

25  ever get to the issue of sentencing, the court will

1    look at the facts separately to determine what role

2    they played.  You know, your argument that --

3    Mr. Sanchez might have a better argument because his

4    client is only involved in one substantive count, but

5    your client is allegedly involved here in several of

6    them.

7                    MR. MORENO:  And we'd have to bring most

8    of that evidence in anyway because part of conspiracy

9    to bring it in and several trips were made between each

10   of them in Mexico, payments made on both sides of the

11   border, smuggled on both sides of the border, and most

12   of the charges are related to the interstate travel.

13   So it's not going keep that evidence out of--.

14                   THE COURT:  Yes.  And where they're all

15   in a conspiracy.

16                   MR. TELLEZ:  Understood, Your Honor.

17   The only other question would be that we ask that my

18   client's, whatever, is redacted as far as what Mr.

19   Cardona stated against my client in his confession in

20   state court or whatever agency.  Same request as far as

21   Mr. Sanchez.

22                   MR. MORENO:  As to all of them.  I guess

23   as to everybody's statements, if there are any, we have

24   to redact them as far as their introduction as far as

25   the remainder of their--.

1          THE COURT:  All right.  Let's talk then

2    about scheduling.  How much time do we think we need --

3    I guess we're still kind of iffy on the other two, but

4    you know, how much time do you think we need for let's

5    just look at these four for now.

6          MR. MORENO:  My best guess would be

7    about three weeks.

8          THE COURT:  Any defense counsel feel

9    differently?

10         Okay.  Ms. Trevino.

11         CASE MANAGER:  I have November 24

12   followed with three weeks.

13         THE COURT:  That's the earliest we have?

14         CASE MANAGER:  You want earlier?

15         MR. MORENO:  That's what?

16         THE COURT:  November is what she is

17   looking at.

18         CASE MANAGER:  November 3rd.

19         MR. MORENO:  I would also let the court

20   know that I have got three, maybe four witnesses in BOP

21   that we have not brought down because we have problems

22   separating them, and that usually takes the marshals

23   about three to four weeks to get them down here.

24         THE COURT:  I really don't want to put

25   it off till November.  The 20th jury selection is just

1    our standard jury, right?

2                    CASE MANAGER:  Right.  So we can do

3    October 14th.

4                    THE COURT:  Okay.  This is what the

5    court is looking at:  I will put it on the 14th of

6    October.  That's a Tuesday because that Monday is a

7    holiday.  And we'll set it for jury selection on that

8    day, although we could maybe do jury selection on the

9    10th, Ms. Trevino.  It's open.

10                   Okay, no.  Let's do jury selection on the 10th,

11   and we'll begin the case on the 14th and go from there.

12                   MR. CZAR:  That's fine.

13                   MR. MORENO:  Once I look at all the

14   evidence and the witnesses, I'll inform the court

15   whether I have any additional.

16                   THE COURT:  I'll tell counsel right now,

17   and I think counsel right now knows that the court will

18   push the case forward.  Because of the nature of the

19   case and the number of people involved, we likely will

20   be starting in the morning's at 8:30 and likely going

21   till late in the afternoon past five if necessary so

22   that we, you know, keep it moving.  I think all counsel

23   knows by now that the court when it's in trial keeps it

24   to a trial schedule except for any emergencies that

25   come up.  So you'll be getting full days, okay.  All

1   right.  Anything else as to these that are trial

2   announcements?

3                    MR. CZAR:  No, Your Honor.

4                    THE COURT:  Okay.  You're welcome to

5   remain, but you may be excused if you want to go on to

6   your other business.

7             Okay.  Then let me talk about the two that need

8   a little bit more time.  That was Andres Alfredo

9   Hernandez, Jaime Miguel Diaz De Leon.  Okay.  What issues

10  do we have that -- I mean yours is just regarding the

11  factual basis.  You think can you convince him,

12  Mr. Figueroa?  What is your situation?

13                   MR. FIGUEROA:  My client is asking or

14  requesting from me for a week.  He wants to discuss the

15  case with his family, the possible sentence, the plea

16  agreement, and that he might want to hire -- retain

17  counsel.  I don't know if he can or not.

18                   THE COURT:  Well, where is your client?

19            Mr. Diaz De Leon.  I'm going to tell you that

20  as far as discussing the case further with your family,

21  we'll get to that in a minute, but as far as changing

22  attorneys on us now, if you get a new attorney now, and I

23  am not telling you that you cannot, but if you go out and

24  find a new attorney now, first of all, it might be

25  difficult because there are so many defendants and

1  witnesses involved here, that a lot of the attorneys have

2  conflicts.  So the first thing is if you start talking to

3  another attorney, the first thing you better tell him is

4  that he needs to make sure that he doesn't have a

5  conflict because I'm not going to have somebody come in

6  to substitute for you and then it turns out that he has a

7  conflict and he cannot represent you.  That's the first

8  thing.

9          The if other thing is that if you go out and

10  you find yourself another attorney he is going to have to

11  be ready to go in this case on the schedule that we're

12  on, which means that he's not getting additional time.

13  I'm not resetting your case for later.  I've given a

14  trial date for these other cases that are going to trial.

15  If you decide you're not going to enter a plea, that

16  you're going to go to trial, you're going to be on that

17  schedule, so that means that your attorney would have to

18  do everything in this case and be ready to go to trial on

19  October the 14th.  Is that clear?

20              DEFENDANT DIAZ DE LEON:  Yes, it's

21  clear.

22              THE COURT:  And I also want you to

23  understand that simply because you go out and you try

24  to get a new attorney doesn't mean that I'm going to

25  allow a substitution here.  It will depend on all the

```
 1    facts before the court, but just so that you understand

 2    that it isn't an automatic thing.  You understand that?

 3                    DEFENDANT DIAZ DE LEON:  I do

 4    understand.

 5                    THE COURT:  Okay.  As far as the

 6    additional time, Mr. Moreno, do you have any position?

 7                    MR. MORENO:  I figure if we can't settle

 8    the dispute in a week, we're not going settle it.

 9                    MR. FIGUEROA:  I would agree with that,

10    Your Honor.  About a week is fine with us.

11                    THE COURT:  Okay.  I will reset you --

12    today is Monday the 4th.  I will reset you for, if I

13    can get on the right month here, the 11th.  And it will

14    be a status conference either to tell me that you're

15    going to trial or to tell me that you are entering a

16    plea.

17                    MR. FIGUEROA:  Yes, Your Honor.

18                    THE COURT:  And I'm making that

19    announcement with everybody present.  And Mr. Figueroa

20    and his client are the only ones required to be

21    present.  Anybody else who wants to be present related

22    to the case is welcome to, but you are not required to

23    attend that hearing.  Okay.  Anything else as to

24    your--?

25                    MR. FIGUEROA:  That's all I have, Your
```

```
 1   Honor.  May I be excused?

 2              THE COURT:  Mr. Montemayor, do you think

 3   a week is sufficient to get your defenses that can be

 4   worked out as well?

 5              MR. MONTEMAYOR:  Yes, Your Honor.  I

 6   agree.  If we can't settle this this week, then it

 7   probably won't be settled, and we'd like the same

 8   consideration as Mr. Figueroa, taking into

 9   consideration as well that I was here for the court's

10   discussion on the trial dates and the jury selection

11   dates, so if it doesn't settle within a week, I mean

12   I'm ready for trial.

13              THE COURT:  Then we'll reset you for the

14   11th as well.

15              MR. MONTEMAYOR:  Thank you, Your Honor.

16   May I be excused?

17              THE COURT:  You may be excused.  Thank

18   you.

19              Okay.  Then I think the only ones we have left

20   are those that are going to be pleas; is that correct?

21   Okay.  Oh, and the issue of the juvenile, I'm sorry, yes.

22   On the issue of the -- Richard Guerrero.  How much time

23   do you think you need to figure out where you stand?  I

24   mean we need to move him off anyway because in any

25   event -- I guess let me ask this first:  As far as the
```

 1    status of the juvenile, are you convinced that that is

 2    correct or do you need more time?

 3                    MR. MORENO:  No, I'm pretty much

 4    convinced.  The request is--.

 5                    THE COURT:  How you are going to

 6    proceed?

 7                    MR. MORENO:  How we process him.

 8                    THE COURT:  Okay.  So he would be off

 9    that trial calendar for right now or do you think that

10    that gets you moot to give him--?

11                    MR. MORENO:  If we decide to go with him

12    as a juvenile and try to transfer him over, he'll be in

13    a completely different -- since he's in custody, I

14    think we only get 30 days to actually go to the

15    disposition of his case.

16                    THE COURT:  In 30 days in this case

17    would begin to run from when?

18                    MR. MORENO:  From the moment we file the

19    information with the complaint.  We have to get

20    certifications from the U.S. Attorney's, certifications

21    to file them all together, and then the motion to

22    transfer, and the actual trial has to happen within 30

23    days.

24                    THE COURT:  But right now we just need

25    to take him off the current -- I mean he wouldn't be on

1    the October the 14th trial date, so -- and I don't

2    want -- I don't certainly want it to linger, so how

3    much time do you think you need to determine how you

4    are going to proceed?

5                    MR. MORENO:  I should know by the end of

6    the week.

7                    THE COURT:  Okay.  Why don't we give him

8    the same status conference on the 11th so we can know

9    what the situation is.  I don't want him lost in the

10   system.  Okay.

11        Mr. Davila for the 11th, and we'll see how it's

12   going to proceed.

13                   MR. DAVILA:  That's fine, Your Honor.

14                   THE COURT:  Okay.  Anything else as to

15   your client?

16                   MR. DAVILA:  So that will be a status

17   conference on August the 11th at what time?

18                   THE COURT:  At 9:00 a.m.

19                   MR. DAVILA:  9:00 a.m., Your Honor.  In

20   light of that announcement, may I be excused?

21                   THE COURT:  You may be excused.  Thank

22   you.

23        Okay.  Now we're ready to proceed with the

24   pleas.  I believe so.  Okay.  Let's get everybody

25   situated here for the pleas.  Mr. Moreno, let me ask you

1   this while everybody is trying to get positioned here:

2   Do we have separate factual basis for all of these?

3               MR. MORENO:  Yes, Your Honor.  I think I

4   probably grouped them for you just to keep them

5   together on a similar factual basis.  There's a couple

6   of them that are just on their own, so they will be

7   different pleas.

8               THE COURT:  Okay.  Well, some of the

9   preliminary then I'll do altogether.  To the extent

10  that everybody can hear me I may be able to do it from

11  where they stand or move them a little bit closer

12  maybe, but since we -- once can we get to the factual

13  basis, we'll be proceeding separately.  I don't

14  necessarily need to have everybody lined up in front of

15  me, but I do want to make sure that everybody is with

16  their counsel and that everybody is able to hear me

17  clearly.  So let me -- how many do we have left here?

18  It's six we have left?  Yes.

19              MR. MORENO:  Seven.

20              THE COURT:  Okay.  Let's move -- yeah,

21  let's move them forward a little bit, but let me get

22  them -- okay.  Or we can have -- yeah, I guess if we

23  can have some in front.  I will leave it to the

24  marshals to some degree, but.  Okay.  Why don't we move

25  this last one -- right, yeah, over there on the bench

1    is fine.  And everybody is with their counsel?  No,

2    we're missing counsel back there.  Okay.  Okay.  We

3    have everybody situated.  Okay.  I do need each one of

4    the defendants to stand up, and I know you're in cuffs,

5    so to the extent that you can, if you will just raise

6    your right hand.  I know it's a partial raise, but

7    raise your right hand to be sworn in, please.

8                    (Defendants sworn.)

9                    THE COURT:  I need to hear a verbal

10   answer from everybody.

11                   (All defendants answer yes.)

12                   THE COURT:  All right.  Thank you, then.

13   I'm going to go ahead and allow you to remain seated

14   for the rest of the proceeding.  At some point in time

15   when we get to a certain place, and you need to stand,

16   that will be fine, but I will allow to you remain

17   seated.  Let me begin by going through and to make sure

18   that we have everybody present and accounted for, but

19   just for the record to be clear, we have Roberto

20   Camacho.

21                   MR. FLORES:  Here, Judge.

22                   THE COURT:  Okay.  We have Arturo

23   Palencia.

24                   MR. SALINAS:  Yes, Your Honor.

25                   THE COURT:  And Edward Carreon-Ibarra.

```
 1              MR. DOMINGUEZ:  Yes, Your Honor.

 2              THE COURT:  Okay.  Rene Garcia.

 3              MR. FLORES:  Yes, Your Honor.

 4              THE COURT:  Mr. Garcia is here.  Okay.

 5    Gustavo Fabian Chapa.

 6              MR. PEREZ:  He's present, Your Honor.

 7              THE COURT:  Raul Castillo.

 8              MR. GUTIERREZ:  Present, here, Your

 9    Honor.

10              THE COURT:  And Jorge Rodriguez.

11              MR. REYES:  He's present, Your Honor.

12              THE COURT:  Okay.  As to each one of the

13    defendants, I'm going to be addressing myself to you.

14    It is very important that you give me a verbal answer.

15    Some of you are doing this with a translater.  Even

16    though your answer may be in Spanish, it is still

17    important that you give me a verbal answer.  Do you

18    understand that?

19         (All defendants answer yes.)

20              THE COURT:  Okay.  I believe Mr.

21    Camacho, did I get an answer from you?

22              DEFENDANT CAMACHO:  Yes.

23              THE COURT:  It's very important that you

24    give me a verbal answer, as I said.  Even though I may

25    be addressing the question to all of you, I have to
```

1  have an individual response from you.  It is also very

2  important that you understand my questions.  If you do

3  not understand my questions, please ask me to repeat

4  them, to explain them further to you.  A lot of times

5  when you are in court like this you tend to look to

6  your attorney to see what he tells you, you should say.

7  I don't want your attorney's answer.  If I want an

8  answer from your attorney, I'll ask your attorney.  I

9  want the answers from you, if I am asking you a

10 question.  So if you don't understand what I'm asking

11 you, ask me to explain it to you instead of asking your

12 attorney what your answer should be.  Do you each

13 understand that?

14              (All defendants answer yes.)

15              THE COURT:  All right.  Now my

16 understanding from your attorneys is that each of you

17 is going to be entering a plea of guilty here to

18 certain of these charges.  It is very important, as I

19 said, that you understand everything that I ask you

20 because at the end of this, if you do enter a plea of

21 guilty, after I hear from the government about what the

22 facts are, I'll make a determination about whether you

23 are guilty.  And I have to be sure that you've

24 understood all of these proceedings.

25              One of the first things that you need to

```
 1    understand is that you each took an oath just a few

 2    minutes ago.  That oath is an oath to tell the truth.  If

 3    you do not tell truth, any statement that you make here

 4    today can subject you to the penalties of perjury, that

 5    is to additional charges.  Do you each understand that?

 6              (All defendants answer yes.)

 7              THE COURT:  Okay.  I'm going to just go

 8    down one by one and ask you your age.  I'm going to ask

 9    the question in general, but I'll wait and get an

10    individual response from each one of you, okay.  So

11    will each one of you please tell me how old you are

12    beginning right here as I'm looking at you.

13              DEFENDANT CASTILLO:  24.

14              THE COURT:  Okay.

15              DEFENDANT CAMACHO:  31.

16              DEFENDANT CARREON:  32.

17              DEFENDANT RODRIGUEZ:  21.

18              DEFENDANT CHAPA:  29.

19              DEFENDANT GARCIA:  21.

20              DEFENDANT PALENCIA:  21.

21              THE COURT:  Let me ask a question of my

22    Court Reporter.  Are you able to keep them straight

23    like this or are you having trouble?

24              (Off-the-Record discussion.)

25              THE COURT:  Okay.  If we do it once, can
```

1    we get them identified and maybe you can sort it later.

2    Okay.  I'm going to ask you again to state your name on

3    the record, and I am going to begin on the first row

4    because the court record has to be clear, so I'm going

5    to ask you to give me your name again so that the court

6    reporter can identify you where you sit, and that way

7    she'll have you straight on the record when you give

8    your answers.

9              So beginning on the first row right here, your

10   name again, please.

11             DEFENDANT CASTILLO:  Raul Castillo.

12             THE COURT:  Raul Castillo, Okay.

13             DEFENDANT CAMACHO:  Robert Camacho.

14             THE COURT:  Give me a second here

15   because I'm reorganizing mine as well.  Okay.  Back in

16   the second row.

17             DEFENDANT CARREON:  Eduardo Carreon.

18             THE COURT:  Okay.

19             DEFENDANT RODRIGUEZ:  Jorge Rodriguez.

20             DEFENDANT CHAPA:  Gustavo Fabian Chapa.

21             THE COURT:  Okay.

22             DEFENDANT GARCIA:  Rene Garcia.

23             DEFENDANT PALENCIA:  Arturo Palencia.

24             THE COURT:  Okay.  All right.  Okay.

25   Now you don't have to repeat your name every time that

```
1    you answer a question, but that way we have you

2    organized for the record.  Okay.  Are anyone of you

3    under the influence of any alcohol, drugs, or

4    medication at this time?  Again, beginning in this

5    order, starting with Mr. Castillo.

6                    DEFENDANT CASTILLO:  No, Your Honor.

7                    DEFENDANT CAMACHO:  No, Your Honor.

8                    DEFENDANT CARREON:  No.

9                    DEFENDANT RODRIGUEZ:  No.

10                   DEFENDANT CHAPA:  No.

11                   DEFENDANT GARCIA:  No.

12                   DEFENDANT PALENCIA:  no.

13                   THE COURT:  Have you within the last 48

14   hours consumed any alcohol, drugs, or medication of any

15   sort?

16                   DEFENDANT CASTILLO:  No, Your Honor.

17                   DEFENDANT CAMACHO:  No, Your Honor.

18                   DEFENDANT CARREON:  No, ma'am.

19                   DEFENDANT RODRIGUEZ:  No.

20                   DEFENDANT CHAPA:  No.

21                   DEFENDANT GARCIA:  No.

22                   DEFENDANT PALENCIA:  No, Your Honor.

23                   THE COURT:  Okay.  Have any one of you

24   been under the care of any doctor, psychologist, or

25   psychiatrist for any mental health issues ever?
```

```
 1                    DEFENDANT CASTILLO:  No, Your Honor.

 2                    DEFENDANT CAMACHO:  No, Your Honor.

 3                    DEFENDANT CARREON:  No, Your Honor.

 4                    DEFENDANT RODRIGUEZ:  No.

 5                    DEFENDANT CHAPA:  No, Your Honor.

 6                    DEFENDANT GARCIA:  No.

 7                    DEFENDANT PALENCIA:  No, ma'am.

 8                    THE COURT:  Now, it is important that

 9      you, as I said, that you understand the nature of the

10      charges against you.  This is a very long indictment.

11      I'm going to first ask the government and counsel to

12      advise me as to each one of these defendants what count

13      you are pleading to.  So beginning with Mr. Castillo,

14      what count is he pleading to?

15                    MR. GUTIERREZ:  Counts one and two, Your

16      Honor.

17                    MR. MORENO:  Both Mr. Castillo and

18      Mr. Rodriguez are pleading to counts one and two, Your

19      Honor.

20                    THE COURT:  Okay.  What about

21      Mr. Camacho?

22                    MR. FLORES:  Count 42, Judge.

23                    MR. MORENO:  Mr. Camacho and Chapa are

24      both pleading to Count 42, Your Honor.

25                    THE COURT:  That was Camacho and Chapa.
```

```
 1              MR. MORENO:  And Chapa.

 2              THE COURT:  Okay.

 3              MR. MORENO:  And Carreon-Ibarra and Rene

 4   Garcia are both pleading to counts 24 and 26.  And

 5   Mr. Palencia is pleading to count 20 and 21.

 6              THE COURT:  Okay.  Counsel agree that

 7   those are the charges?

 8              MR. DOMINGUEZ:  Yes, Your Honor.

 9         (All attorneys answer yes, Your Honor.)

10              THE COURT:  Okay.  Because this is a

11   little bit of a lengthy indictment here, I'm going

12   to -- well, I thought I had it in front of me.  Didn't

13   I have a copy of the indictment, Ms. Trevino?

14              CASE MANAGER:  Yes.

15              THE COURT:  I thought I did.  Did I get

16   it mixed up with someone else?  Right here.  Right

17   here.

18         Okay.  I'm going to go through and read the

19   indictment to you as -- and some of it I'm going to go in

20   the order of the indictment.  Since some of you are not

21   going to be pleading to everything that I read, some of

22   you will be pleading to some of what I read only.  But it

23   is still important that you listen to me closely and at

24   the end of when I read through this, I'm going to ask you

25   whether you understand, and I will come back and identify
```

1    specifically for you what you are going to plead to.  But

2    it is important that you understand this.  And I may

3    actually ask Mr. Moreno to assist with some of the

4    reading because it is rather lengthy.  Okay.  As a matter

5    of fact -- okay.

6            The indictment charges, and I will begin with

7    the beginning and then get to the separate counts.  The

8    beginning of the indictment charges that at various times

9    relevant to the indictment, the Gulf Cartel, a.k.a. "La

10   Compania" {The Company} is a drug-trafficking and money

11   laundering organization which imports and distributes

12   marijuana and cocaine from Mexico into the United States.

13           The Zetas are the enforcement arm of the Gulf

14   Cartel, "La Compania" and its members engage in

15   kidnapping, torture, and murder as well as

16   drug-trafficking and money laundering to further goals of

17   the organization.

18           One of the unindicted -- or excuse me, unnamed

19   defendants is a leader and organizer within the Gulf

20   Cartel and its enforcement arm the Zetas.  Certain others

21   are supervisors of cells within the Gulf Cartel and its

22   enforcement arm the Zetas.  The Gulf Cartel has been a

23   conflict -- has been in conflict and competition with the

24   Sinaloa Cartel "Los Chapos" for control of the United

25   States-Mexico border in and around Laredo, Texas, known

1   as the Laredo -- Nuevo Laredo Plaza.

2        The manner and means of the conspiracy:  It was

3   a part of the conspiracy that the defendants and other

4   members of the Gulf Cartel and its enforcement on the

5   Zetas would import cocaine and marijuana into the United

6   States from Mexico.  It was further part of the

7   conspiracy that the defendants and other members of the

8   Gulf Cartel and its enforcement arm, the "Zetas" would

9   travel in interstate and foreign commerce to affect the

10  goals of the organization.

11       It was further part of the conspiracy that the

12  defendants and other members of the Gulf Cartel and its

13  enforcement arm, the "Zetas" would secure houses and

14  apartments in Laredo, Texas to safeguard its controlled

15  substances.

16       It was further part of the conspiracy that the

17  defendants and other members of the Gulf Cartel and its

18  enforcement arm, the "Zetas" would secure firearms to

19  safeguard its control substances and its members.

20       It was further part of the conspiracy that the

21  defendants and other members of the Gulf Cartel and its

22  enforcement arm, the "Zetas" would transport firearms in

23  interstate and foreign commerce to affect the goals of

24  the organization.

25       It was further part of the conspiracy that the

1  defendants and other members of the Gulf Cartel and its

2  enforcement arm, the "Zetas," would recruit and hire

3  "sicarios" or assassins to protect its territory and

4  controlled substances from rival drug-trafficking

5  organizations.

6          It was further part of the conspiracy that the

7  defendants and other members of the Gulf Cartel and its

8  enforcement arm, the "Zetas," would obtain transportation

9  for its "sicarios".

10         It was further part of the conspiracy that the

11 defendant and other members of the Gulf Cartel and its

12 enforcement arm, the "Zetas" would rent houses and

13 apartments to house its "sicarios".

14         It was further part of the conspiracy that the

15 defendants and other members of the Gulf Cartel and its

16 enforcement arm, the "Zetas" would utilize the "sicarios"

17 to kidnap, torture, and murder rivals and informants of

18 the organization.

19         It was further part of the conspiracy that the

20 defendant and other members of the Gulf Cartel and its

21 enforcement arm, the "Zetas," would pay "sicarios" on a

22 weekly basis with money, controlled substances, and other

23 items of monetary value to kidnap, torture and murder

24 rivals and informants of the organization.

25         It was further part of the conspiracy that the

defendants and other members of the Gulf Cartel and its

enforcements arm, the "Zetas," would pay "sicarios" a

bonus of money, controlled substances, and other items of

monetary value after each kidnapping, torture, and murder

of rivals and informants of the organization.

Count one:  Count one of the indictment, the

drug conspiracy count, charges that beginning on or about

August 2001, and continuing up to and including the date

of this indictment, in the Southern District of Texas and

elsewhere within the jurisdiction of the court, that

certain other named defendants, and this would include

Raul Castillo, who is going to be entering a plea as to

count one:  Did knowingly and intentionally conspire and

agree together with each other and with other persons

known and unknown to the grand jury to possess with

intent to distribute a controlled substance.

This offense involved:  A quantity of

5 kilograms or more of a mixture or substance containing

a detectable amount of cocaine, a Schedule II controlled

substance, and a quantity of 1,000 kilograms or more of a

mixture or substance containing a detectable amount of

marijuana, a Schedule I controlled substance.

Okay, Mr. Moreno, I'm going to ask you to

assist the court in reading the overt acts.  This is part

of the conspiracy alleged in count one.

```
1                    MR. MORENO:  I was going to ask whether
2     the clients wanted them read.
3                    THE COURT:  Well.
4                    MR. MORENO:  I'll be happy to read it.
5     I don't know that we actually need them.
6                    THE COURT:  Does counsel -- let me maybe
7     ask counsel.  As to Mr. Castillo and I guess
8     Mr. Rodriguez, your clients will be pleading as to
9     count one.  And mister--.
10                   MR. REYES:  Count one.
11                   THE COURT:  Excuse me?
12                   MR. REYES:  Count one.
13                   THE COURT:  Right.  But count one
14    pertains to what the conspiracy that I just read.  Do
15    you waive the reading of the overt acts?  I'm not sure
16    that it's necessary to waive it, but.
17                   MR. MORENO:  They're actually only
18    mentioned in the last three, if you like we can read
19    the last three.
20                   THE COURT:  Okay.  The last three.
21    Okay, Let me just concentrate on the last three.
22                   MR. MORENO:  So overt act Number 64:
23    Alleges that on August 12th, 2007, Raul Castillo and
24    other coconspirators, known and unknown to the grand
25    jury, attempted to ship approximately 166 kilograms of
```

1    cocaine to Dallas, Texas.

2              Overt act number 65:  Alleges that on

3    August 14th, 2007, Raul Castillo and other

4    coconspirators, known and unknown to the grand jury,

5    attempted to ship approximately 88 kilograms of cocaine

6    to Dallas, Texas.

7              And overt act Number 66:  Alleges that on or

8    about February 8th, 2008, Raul Castillo and Jorge

9    Rodriguez and other coconspirators, known and unknown, to

10   the grand jury, attempted to transport approximately

11   $870,535.00 from Dallas, Texas to Nuevo Laredo,

12   Tamaulipas, Mexico all in violation of Title 21, U.S.

13   Code, Sections 846, 841(a)(1) and 841 (b)(1)(A).

14              THE COURT:  Okay.  So that's count one.

15   The other count here is count two that certain of you

16   will also be pleading to count two:  The money

17   laundering conspiracy charges that beginning on or

18   about August 2001 and continuing up to and including

19   the date of this indictment in the Southern District of

20   Texas and elsewhere within the jurisdiction of this

21   court, that certain of the defendants, and in

22   particular pertinent here is Raul Castillo and

23   Rodriguez, Jorge Rodriguez, did knowingly and

24   intentionally conspire and agree with other persons

25   known and unknown to the grand jury to conduct and

 1    attempt to conduct financial transactions affecting

 2    interstate and foreign commerce then well knowing that

 3    the financial transactions involved the proceeds of

 4    some form of unlawful activity, that is, the sale and

 5    distribution of controlled substances which property

 6    involved in the financial transactions represented the

 7    proceeds of a specified unlawful activity, that is the

 8    sale and distribution of controlled substances with,

 9    one, the intent to promote the carrying on of specified

10    unlawful activity; namely, the sale and distribution of

11    controlled substances.

12            And, two, knowing that the transactions were

13    designed in whole or in part to conceal and disguise the

14    nature, location, source, ownership, and control of the

15    proceeds of the said specified unlawful activity in

16    violation of Title 18, United States Code, Section 1956

17    (a)(1) and to transport and transfer and attempt to the

18    transport and transfer monetary instruments and funds,

19    that is, United States currency from a place in the

20    United States to a place outside the United States with

21    the intent to promote the carrying on of a specified

22    unlawful activity, that is, the sale and distribution of

23    controlled substances in violation of Title 18, United

24    States Code, Section 1956(a)(2)(a), and in violation of

25    Title 18, United States Code, Section 1956(h).  That's

```
 1    count two.
 2              The next count that I'm going to move to is
 3    Count 20.
 4                   MR. MORENO:  Would you like me to read
 5    it, ma'am?
 6                   THE COURT:  Yes, please.
 7                   MR. MORENO:  Count 20 from on or about
 8    January 25th, 2006, and continuing to on or about
 9    January 26th, 2006, in the Southern District of Texas
10    and elsewhere and within the jurisdiction of the court,
11    Defendants Arturo Palencia and others, aiding and
12    abetting each other, did knowingly and intentionally
13    possess with intent to distribute a controlled
14    substance.  This offense involved a quantity of 100
15    kilograms or more of a mixture or substance containing
16    a detectable amount of marijuana, a Schedule I
17    controlled substance, in violation of Title 21, United
18    States Code, Sections 841(a)(1) and 841(b)(1)(B) and
19    Title 18, United States Code, Section 2.
20                   THE COURT:  And then 21 as well, if
21    you'll--.
22                   MR. MORENO:  And then 21 alleges that on
23    or about January 26th, 2006, in the Southern District
24    of Texas and elsewhere and within the jurisdiction of
25    the court, the defendants alleged here and Arturo
```

1    Palencia, aiding and abetting each other, did knowingly

2    and intentionally:

3            A)Carry use and discharge a firearm, that is

4    the model and type unknown to the grand jury during and

5    in relation to and

6            B)Possess and discharge a firearm, that is the

7    model and type unknown to the Grand Jury in furtherance

8    of

9            A drug trafficking crime which may be

10   prosecuted in a court of the United States, that is,

11   conspiracy to possess and possession with intent to

12   distribute a controlled substance as charged in Counts 1

13   and 20 of the indictment in violation of Title 18, United

14   States Code, Section 924(c)(A)(1)(A)3 or

15   (iii)924(c)(1)(c)(i), and 2.

16            THE COURT:  Okay.  Mr. Palencia, those

17   were the charges as I understand to which you will be

18   pleading.  All right.  24 I guess.

19            MR. MORENO:  Twenty-four and 26.

20            THE COURT:  Okay.

21            MR. MORENO:  Count 24 charges that on or

22   about February 8th, 2006, in the Southern District of

23   Texas and elsewhere and within the jurisdiction of the

24   court, the defendants -- let me see, Eduardo

25   Carreon-Ibarra and Rene Garcia and other

coconspirators, known and unknown to the grand jury,

aiding and abetting each other, did travel in foreign

commerce, that is to and from the United States and to

and from Mexico and use a facility in interstate and

foreign commerce, that is a cellular telephone, with

the intent to commit a crime of violence to further an

unlawful activity, that is a business enterprise

involved in controlled substances in violation of Title

21, United States Code, Sections 841(a)(1) and 846, and

thereafter intentionally and knowingly attempted to

commit a crime of violence to further such unlawful

activity, in violation of Title 18, United States Code,

Section 1952 (a)(2)(b)and Section 2.

        And then Count 26 alleges that on or about

February -- from on or about February 18th, 2006, and

continuing to on or about February 19th, 2006, in the

Southern District of Texas and within the jurisdiction of

the court, Rene Garcia and Eduardo Carreon-Ibarra, aiding

and abetting each other did knowingly and intentionally

possess at least one firearm, to-wit: an AR-15, 223

caliber machine gun, with an obliterated serial number;

B: a MAK-90, 7.62X39mm caliber semi-automatic assault

rifle, serial number 91784.  C: A Glock, 40 caliber

pistol, serial number FCM759.  And D:  Smith and Wesson,

9mm caliber pistol, serial number TCL4868.

1          In furtherance of a crime of violence which may

2     be prosecuted in a court of the United States, that is,

3     interstate travel and aid of racketeering as charged in

4     Count 24 of the indictment and a drug trafficking crime

5     which may be prosecuted in the United States, that is, a

6     conspiracy to possess with intent to distribute a

7     controlled substance as charged in count one of the

8     indictment in violation of Title 18, United States Code,

9     Section 924(c)(1)(A)(i), 924(c)(1)(B)(ii) in Section 2.

10              THE COURT:  Okay.

11              MR. MORENO:  And then we go to--.

12              THE COURT:  Forty-two.

13              MR. MORENO:  Count 42 alleges that on or

14    about April 10th, 2006, in the Southern District of

15    Texas and within the jurisdiction of the court,

16    defendants Gustavo Fabian Chapa and Roberto Camacho and

17    other coconspirators known and unknown to the Grand

18    Jury, aiding and abetting each other, did knowingly and

19    intentionally possess with intent to distribute a

20    controlled substance.  This substance involved a

21    quantity of less than 500 grams of a mixture or

22    substance containing a detectable amount of cocaine, a

23    Schedule II controlled substance

24          In violation of Title 21, United States Code,

25    Section 841(a)(1), 841(b)(1)(c), and Title 18, United

1    States Code, Section 2.

2                    THE COURT:  Okay.  We read all the

3    charges.  And some of you are only pleading to certain

4    of those charges, but it is important, nonetheless,

5    that you each understand the charges against you.

6                    Mr. Castillo and Mr. Rodriguez, you heard the

7    court read the first charge that is the conspiracy, and

8    then second charge which was the money laundering

9    conspiracy charge.  Do you each understand those charges

10   against you?

11                   DEFENDANT CASTILLO:  Yes.

12                   DEFENDANT RODRIGUEZ:  Yes, Your Honor.

13                   THE COURT:  Let me ask the other

14   defendants, and I will come back and ask that general

15   question.  Okay.  As to Mr. Carreon and Mr. Garcia, you

16   heard the charges set out in Counts 20 and 21, that is

17   the possession with intent to distribute marijuana and

18   the use of a firearm and drug-trafficking crime -- I'm

19   sorry--.

20                   MR. MORENO:  That was 24 and 26.

21                   THE COURT:  That was 24 and 26.  I'm

22   sorry, my mistake.  Let me do what I meant to do, and

23   that's as to Mr. Palencia.

24                   MR. MORENO:  Palencia.

25                   THE COURT:  The charges against you are

```
 1    the possession with intent to distribute marijuana and
 2    the use of a firearm in a drug-trafficking crime.  Do
 3    you understand that those are the charges against you?
 4                   DEFENDANT PALENCIA:  Yes, ma'am.
 5                   THE COURT:  Okay.  Now moving on to
 6    Mr. Carreon and Mr. Garcia.  Your Count 24 was the
 7    attempted murder count and the Count 26 was the use of
 8    a firearm in connection with a crime of violence in a
 9    drug-trafficking crime.  Do you each understand those
10    are the charges against you?
11                   DEFENDANT CARREON:  Yes, ma'am.
12                   DEFENDANT GARCIA:  Yes.
13                   THE COURT:  And then finally as to
14    Mr. Chapa and Mr. Camacho, the possession with intent
15    to distribute cocaine, Count 42.  Do you understand
16    that those are the charges against you?
17                   DEFENDANT CHAPA:  Yes.
18                   DEFENDANT CAMACHO:  Yes.
19                   THE COURT:  Okay.  Now have each one of
20    you had the opportunity to discuss these charges with
21    your attorney?
22                   DEFENDANT CASTILLO:  Yes, Your Honor.
23                   DEFENDANT CAMACHO:  Yes, Your Honor.
24                   DEFENDANT CARREON:  Yes.
25                   DEFENDANT RODRIGUEZ:  Yes.
```

```
 1                    DEFENDANT CHAPA:  Yes.

 2                    DEFENDANT GARCIA:  Yes.

 3                    DEFENDANT PALENCIA:  Yes.

 4                    THE COURT:  Is each one of you satisfied

 5    with the services of your attorney?

 6                    DEFENDANT CASTILLO:  Yes, Your Honor.

 7                    DEFENDANT CAMACHO:  Yes, Your Honor.

 8                    DEFENDANT CARREON:  Yes.

 9                    DEFENDANT RODRIGUEZ:  Yes.

10                    DEFENDANT CHAPA:  Yes.

11                    DEFENDANT GARCIA:  Yes.

12                    DEFENDANT PALENCIA:  Yes.

13                    THE COURT:  Now do you each understand

14    that you have the right to enter a plea of not guilty

15    to these charges, that if you wish to enter a plea of

16    not guilty to these charges, we will set this matter

17    for trial.  A jury will be selected to hear the

18    evidence against you.  The government will present

19    their evidence both through any live witnesses that

20    they may have as well as through any sort of

21    documentary evidence that they will present.  You will

22    have the right through your attorneys to ask questions

23    of these witnesses.  You will have the right to bring

24    any witnesses of your own that you wish to testify on

25    your behalf.  You will also have the right to testify,
```

1    if you wish to testify.  However, you will also have

2    the right to choose not to testify, and if you choose

3    not to testify, that cannot be held against you.  Do

4    you each understand that these are rights that you

5    have, if you wish to enter a plea of not guilty to

6    these charges?

7                    DEFENDANT CASTILLO:  Yes, Your Honor.

8                    DEFENDANT CAMACHO:  Yes, Your Honor.

9                    DEFENDANT CARREON:  Yes.

10                    DEFENDANT RODRIGUEZ:  Yes.

11                    DEFENDANT CHAPA:  Yes.

12                    DEFENDANT GARCIA:  Yes.

13                    DEFENDANT PALENCIA:  Yes.

14                    THE COURT:  Do you understand that if

15   you enter a plea of guilty to these charges that you

16   are giving up these rights because if you enter a plea

17   of guilty to these charges I will be the one that

18   decides whether you are guilty rather than having a

19   jury decide whether you are guilty, and the way I will

20   determine whether you are guilty is by listening to the

21   facts that the government says would be proven in this

22   case.  I will ask you and your attorneys whether

23   there's any disagreement about those facts.  If there

24   is, we'll sort out what is agreed to.  And then based

25   on what is presented to me, I will decide whether you

1    are guilty rather than having a jury decide whether you

2    are guilty based on the testimony of the witnesses and

3    based on the documents that are admitted into evidence.

4             So, in other words, if you enter not guilty,

5    the jury decides.  If you enter guilty, I decide.  Do you

6    each understand that?

7                 DEFENDANT CASTILLO:  Yes, Your Honor.

8                 DEFENDANT CAMACHO:  Yes, Your Honor.

9                 DEFENDANT CARREON:  Yes.

10                 DEFENDANT RODRIGUEZ:  Yes.

11                 DEFENDANT CHAPA:  Yes.

12                 DEFENDANT GARCIA:  Yes.

13                 DEFENDANT PALENCIA:  Yes.

14             THE COURT:  And understanding that, do

15    you wish to give up those rights that I explained to

16    you to have a jury decide the case?  Do you each wish

17    to give that up?  And that would include the other

18    rights about having the witnesses testify live, having

19    the documents admitted into evidence, you being able to

20    call in witnesses of your own, and you being able to

21    choose to testify or not testify.  All of those rights

22    you would be giving up by entering as a plea of guilty.

23    And do you wish to do that?

24                 DEFENDANT CASTILLO:  Yes, Your Honor.

25                 DEFENDANT CAMACHO:  Yes, Your Honor.

1              DEFENDANT CARREON:  Yes.

2              DEFENDANT RODRIGUEZ:  Yes.

3              DEFENDANT CHAPA:  Yes.

4              DEFENDANT GARCIA:  Yes.

5              DEFENDANT PALENCIA:  Yes.

6              THE COURT:  Okay.  Now each one of you

7    has signed a plea agreement with the government.  It is

8    very important that you understand that a plea

9    agreement with the government is an agreement that you

10   have with the government.  It is not an agreement with

11   the court, that is, it's not an agreement with me.

12   When you enter into a plea agreement with the

13   government, you agree with the government that you will

14   give up certain rights in exchange for which the

15   government agrees that they will do certain things for

16   you.  Like, for example, they will not charge you with

17   or they will not prosecute the other charges that are

18   here pending against you.  Most of you have more than

19   one charge here or some of you are pleading to two and

20   some of you only to one.

21           But a lot of times in a plea agreement the

22   government agrees to give up certain other charges

23   against you or they also agree to make certain

24   recommendations to the court.  Okay.  Now as far as you

25   know the other charges, it is up to the government to

1    decide whether they pursue those or not, and they've

2    agreed in a plea agreement not to do so.  But as far as

3    recommendations that they make to the court, they are

4    only recommendations.  In other words, if you do enter a

5    plea of guilty and I find you guilty, and at the time of

6    sentencing the government makes the recommendations that

7    they have agreed to make to the court, it is up to me to

8    decide whether I will accept those recommendations.  If I

9    decide to accept those recommendations, obviously, I'll

10   follow them.  But if I decide I will not accept the

11   recommendations, I can sentence you to whatever I decide

12   will be an appropriate sentence so long as they don't go

13   above what the statute provides, the law that is.  But I

14   don't have to allow you to withdraw your plea of guilty.

15   Do you each understand that?

16              DEFENDANT CASTILLO:  Yes, Your Honor.

17              DEFENDANT CAMACHO:  Yes, Your Honor.

18              DEFENDANT CARREON:  Yes.

19              DEFENDANT RODRIGUEZ:  Yes.

20              DEFENDANT CHAPA:  Yes.

21              DEFENDANT GARCIA:  Yes.

22              DEFENDANT PALENCIA:  Yes.

23              THE COURT:  Okay.  And it is very

24   important for you to understand also that it is up to

25   me to determine what your sentence will be.  Again, the

1    government may make a recommendation about what the

2    government thinks what your sentence should be, and

3    that may be part of your agreement with the government,

4    that they will recommend a certain sentence to me, but

5    I don't have to accept it.  I don't have to sentence

6    you to whatever you and the government think would be

7    the correct sentence for you.  I decide what the

8    sentence will be.  I decide that at the time of

9    sentencing.  I will not tell you right now what your

10   sentence is going to be.  I will not promise you

11   anything by way of your sentence.  I will decide it at

12   the time of sentencing.  I will decide it based on all

13   the information that is presented to me, which will

14   include your background in general, your criminal

15   history, it includes employment, it includes family.

16   It includes all of those things.  I take those into

17   account at the time of sentencing, and anything else

18   that you wish to present to me, I will consider, and I

19   will then decide what the sentence will be.  But I am

20   not bound to follow whatever recommendation the

21   government makes to me.  Do you each understand that?

22                   DEFENDANT CASTILLO:  Yes, Your Honor.

23                   DEFENDANT CAMACHO:  Yes, Your Honor.

24                   DEFENDANT CARREON:  Yes.

25                   DEFENDANT RODRIGUEZ:  Yes.

```
 1                    DEFENDANT CHAPA:  Yes.

 2                    DEFENDANT GARCIA:  Yes.

 3                    DEFENDANT PALENCIA:  Yes.

 4                    THE COURT:  Okay.  And even if I do not

 5      follow the recommendations made to me by the

 6      government, I don't have to allow you to withdraw your

 7      plea of guilty.  Do you understand that?

 8                    DEFENDANT CASTILLO:  Yes.

 9                    DEFENDANT CAMACHO:  Yes.

10                    DEFENDANT CARREON:  Yes.

11                    DEFENDANT RODRIGUEZ:  Yes.

12                    DEFENDANT CHAPA:  Yes.

13                    DEFENDANT GARCIA:  Yes.

14                    DEFENDANT PALENCIA:  Yes.

15                    THE COURT:  Now, I'm going to have the

16      government go through and specify for each one of you

17      what the possible sentence that you may be looking at

18      under the statute here is, and then I'll ask you some

19      questions.

20              Mr. Moreno, in any order that is easiest for

21      you.

22                    MR. MORENO:  Let's try to stay in the

23      same way.  As to count one for Mr. Castillo and

24      Mr. Rodriguez, a conspiracy under Title 21, United

25      States Code, Section 846, as charged in the indictment
```

```
 1   carries a sentence to include a mandatory minimum term
 2   of imprisonment of ten years imprisonment for life and
 3   a fine of not more than $4 million, and, additionally,
 4   the defendants may receive a term of supervised release
 5   of imprisonment, of release after imprisonment, for up
 6   to five years.  The statutory maximum statutory penalty
 7   for each of the violations of Count 2, the money
 8   laundering conspiracy is for imprisonment for 20 years
 9   and a fine of either $500,000 or twice the value of the
10   money involved in the transaction, whichever is
11   greater.  Additionally, each defendant may receive a
12   term of supervised release after imprisonment of up to
13   three years.
14             THE COURT:  Okay.  Let me address these
15   one by one so that I don't get all confused here.
16             Okay.  Mr. Castillo and Mr. Rodriguez, you've
17   heard the government state what the possible sentence
18   could be under the statute as to Count 1, and that's
19   probably the one that maybe concerns you a little bit
20   more.  It's a minimum of ten years.  Do you each
21   understand that, Mr. Castillo?
22             DEFENDANT CASTILLO:  Yes, Your Honor.
23             THE COURT:  Okay.  Now you're also
24   pleading to Count 2.  Count 2 was up to 20 years.  But
25   I want to make sure that you understand that it's a
```

```
1   minimum of ten years as to count one.
2                   DEFENDANT CASTILLO:  Yes.
3                   THE COURT:  Mr. Rodriguez, the same is
4   true for you.  Mr. Rodriguez is right here, okay.  Do
5   you understand that?
6                   DEFENDANT RODRIGUEZ:  Yes, ma'am.
7                   THE COURT:  So absent some other
8   provision, and I don't know in your cases whether there
9   is anything else.  Is there any other possibilities
10  here for either?
11                  MR. MORENO:  No enhancements or anything
12  like that.
13                  THE COURT:  Okay.  So then you each
14  understand you're looking at, at least ten years.  Now
15  as to Count 1 -- as to Count 2.  And as to Count 1 it
16  could be up to life.  As to Count 2 it could be up to
17  20 years, but it wouldn't be under, in any event, for
18  any reason.  There are certain other things like the
19  fines, the penalties.  The term of supervised release
20  included as well that Mr. Moreno just stated.  Do you
21  each understand that?
22                  DEFENDANT CASTILLO:  Yes, ma'am.
23                  DEFENDANT RODRIGUEZ:  Yes, ma'am.
24                  THE COURT:  Okay.  All right.  Let's
25  move on to I guess mister--.
```

```
 1              MR. MORENO:  Mr. Palencia on Count 20
 2    and 21.  Count 20 charges him with intent to distribute
 3    more than 100 kilograms of marijuana, in violation of
 4    Title 21, USC, 846, 841(b)(1)(B) to include a mandatory
 5    minimum term of imprisonment of five years.  His
 6    imprisonment up to 40 years, and a fine of no more than
 7    two-million dollars.  Additionally, the defendant may
 8    receive a term of supervised release after imprisonment
 9    of up to four years.  And the statutory penalty --
10    maximum penalty for each violation of 18 USC,
11    924(c)(1)(A)(iii), and 924(c)(1)(D)is to include a
12    consecutive mandatory minimum term of imprisonment of
13    ten years, is imprisonment for life, and a fine of not
14    more than $250,000.  Additionally, he may receive a
15    term of supervised release after imprisonment of up to
16    five years.
17              THE COURT:  Okay.  Mr. Palencia, it's
18    important that you understand as well that you are
19    looking for Count 20 at a minimum of five years.  That
20    means you won't get anything less than five years.
21    But, and more importantly, as to Count 21, it's a
22    minimum of ten years consecutive, that is in addition
23    to the minimum of five years as to Count 20.  So, in
24    other words, Count 20 at the minimum, at the least
25    would be five years.  Count 21 at the least would be
```

```
1   ten years, but added to the five years.  They wouldn't
2   run together.  And that's of course in addition to the
3   other fines, the penalties, and the term of supervised
4   release that the government addressed.  Do you
5   understand that?
6                   DEFENDANT PALENCIA:  Yes, ma'am.
7                   THE COURT:  All right.
8                   MR. MORENO:  As to Mr. Eduardo
9   Carreon-Ibarra and Mr. Rene Garcia on Counts 24 and 26.
10  Count 24, the ITAR violation, interstate and foreign
11  travel and transportation and aid of racketeering.  The
12  statutory maximum penalty for each violation of
13  1952(a)(2)(B) is imprisonment for not more than 20
14  years, and a fine of not more than $250,000.
15  Additionally, the defendants may receive a term of
16  supervised release of up to three years.  The statutory
17  violation for Count 26 and 924(c)(1)(A)(i) and
18  (c)(1)(B)(ii) is to include a consecutive minimum term
19  of imprisonment of five years, is imprisonment of life,
20  no more than life, and a fine of no more than $250,000.
21  Additionally, each defendant may receive a term of
22  supervised release after imprisonment of up to five
23  years.
24                  THE COURT:  Okay.  So then, Mr. Carreon
25  and Mr. Garcia, as to Count 24 you would be looking at
```

1    up to 20 years.  That one doesn't have a minimum.

2    Okay.  But in addition to whatever you receive for

3    Count 24, you would be receiving in addition to that a

4    minimum of five years, that is, whatever the court

5    sentences you to on Count 24, you will get plus a

6    minimum of five years.  I don't know what you will

7    actually get, but you need to make sure that you

8    understand that combined you're looking at something

9    over five years.  Do you each understand that?

10                   DEFENDANT CARREON:  Yes, ma'am.

11                   DEFENDANT GARCIA:  Yes, Your Honor.

12                   THE COURT:  And then finally.

13                   MR. MORENO:  Mr. Camacho and mister.

14    Roberto Camacho and Gustavo Fabian Chapa in Count 42,

15    Your Honor, which charges possession with intent to

16    distribute less than 500 grams of cocaine.  The

17    statutory maximum penalty for each violation of Title

18    21, United States Code, Sections 846 and 841(b)(1)(C)

19    is imprisonment for 20 years, and a fine of not more

20    than $1 million.  Additionally, each defendant may

21    receive a term of supervised release after imprisonment

22    of not less than three years.

23                   THE COURT:  Okay.  So, Mr. Camacho and

24    Mr. Chapa.  Do you understand that you are looking at

25    the possibility of up to 20 years.  These don't have a

1    minimum under the statute.  But you're looking at the

2    possibility of up to 20 years.  Do you each understand

3    that?

4                    DEFENDANT CAMACHO:  Yes, Your Honor.

5                    DEFENDANT CHAPA:  Yes, Your Honor.

6                    THE COURT:  Okay.  Now the other thing

7    that is important for you each to understand is that in

8    addition, and this is -- sometimes it sounds a little

9    odd to people that don't work within the system.  But

10   this is what we refer to as the statutory penalties.

11   What the law, you know, that you are alleged to have

12   violated says you would receive by way of sentence.  We

13   have something else that we refer to as the guidelines.

14   They are also law in some respect, but not something

15   that I have to follow.  Let me explain that to you a

16   little bit further, okay:

17            The guidelines are something that is determined

18   by looking at your criminal history and looking at this

19   particular offense.  So we take this offense and we give

20   it a certain number.  We take your criminal history,

21   based on whatever you may have, and I haven't gone

22   through and looked at each one of you, but I do

23   understand that some of you have criminal history.  And

24   we take that and we give that a certain number.  We take

25   those two things together.  And your attorneys may have

1    shown you a chart that looks something like this.  Maybe

2    not colored orange, but that has numbers down the side.

3    Numbers across the top.  We take the offense.  We take

4    your criminal history.  We put them on this chart,

5    wherever they meet we have a range of months.

6         For example, here we have 63 to 78.  So we have

7    a range of months about where the guidelines place you.

8    That will be determined for each one of you.  I don't

9    know, again, what that may be.  So your lawyer may have

10   given you some idea of where your lawyer thinks you may

11   fall, but there are certain things that you need to

12   understand about the guidelines.  First of all, they are

13   just guidelines.  I should consider them.  I should

14   decide what the correct guideline is, but I do not have

15   to follow the guideline.  At the time of sentencing, I

16   can decide to sentence you within the guidelines, if I

17   think that's the appropriate sentence.  I can decide to

18   sentence you below the guidelines, if I think that is the

19   appropriate sentence or I can decide to sentence you

20   above the guideline, again, based on what I determine to

21   be appropriate.  The only thing I can't do is go outside

22   the statutory penalties that we just talked about a

23   little while ago.

24        So, for example, I told you some of you are

25   looking at a minimum of ten, some a minimum of five, and

1   some in addition to one count you're adding on another

2   count.  The guidelines are something that I should

3   consider, but, again, I don't have to follow them.  Now

4   your lawyers may have given you some idea of where you

5   fall in the guidelines, but there's no way that your

6   lawyers can promise you or guarantee to you that this is

7   where, first of all, where you will be in the guidelines

8   or that this is where you are going to be sentenced

9   because, I, as I said, I don't decide that until the time

10  of sentencing.  Do you each understand that?

11              DEFENDANT CASTILLO:  Yes.

12              DEFENDANT CAMACHO:  Yes.

13              DEFENDANT CARREON:  Yes.

14              DEFENDANT RODRIGUEZ:  Yes.

15              DEFENDANT CHAPA:  Yes.

16              DEFENDANT GARCIA:  Yes.

17              DEFENDANT PALENCIA:  Yes.

18              THE COURT:  Okay.  Has any one of you

19  been promised that if you enter a plea of guilty that

20  you will get this particular sentence.  For example,

21  has anybody told you, if you enter a plea of guilty, I

22  promise you that you will not get more than the

23  five-year minimum that the law says you should get or

24  more than the ten-year minimum that the law says you

25  should get or anything of that nature?  Has anybody

1    made you a promise about the sentence that you will

2    receive if you enter a plea of guilty?

3                    DEFENDANT CASTILLO:  No, Your Honor.

4                    DEFENDANT CAMACHO:  No.

5                    DEFENDANT CARREON:  No.

6                    DEFENDANT RODRIGUEZ:  No.

7                    DEFENDANT CHAPA:  No.

8                    DEFENDANT GARCIA:  No.

9                    DEFENDANT PALENCIA:  No.

10                   THE COURT:  Okay.  Has anybody

11   guaranteed to you that you will get a particular range?

12   In other words, I guarantee that if you enter a plea of

13   guilty you will be looking at, for example, 100 to 125

14   months or anything like that where somebody has told

15   you, you know, even though I'm not telling you that

16   this is the exact sentence you will get, I can tell you

17   that you won't get more than this or more than that.

18   Has anybody given you that type of guarantee or

19   promise?

20                   DEFENDANT CASTILLO:  No, Your Honor.

21                   DEFENDANT CAMACHO:  No.

22                   DEFENDANT CARREON:  No.

23                   DEFENDANT RODRIGUEZ:  No.

24                   DEFENDANT CHAPA:  No.

25                   DEFENDANT GARCIA:  No.

```
 1                  DEFENDANT PALENCIA:  No.

 2                  THE COURT:  Okay.  Okay.  Do we have

 3      waivers of appeal and collateral attack on these?

 4                  MR. MORENO:  They all have waivers of

 5      appeal, Your Honor.

 6                  THE COURT:  Each one of you as part of

 7      your plea agreement -- and, actually, let me go ahead

 8      and address this.  I talked about this earlier.  Each

 9      one of you has a plea agreement here with the

10      government.  Now I have them all in front of me.  As to

11      Mr. Palencia, Mr. Castillo, well, each one of you, have

12      the agreement that indicates your signature on the

13      agreement.  Did each one of you sign the agreement that

14      bears your signature here in front of the court?

15                  DEFENDANT CASTILLO:  Yes.

16                  DEFENDANT CAMACHO:  Yes.

17                  DEFENDANT CARREON:  Yes.

18                  DEFENDANT RODRIGUEZ:  Yes.

19                  DEFENDANT CHAPA:  Yes.

20                  DEFENDANT GARCIA:  Yes.

21                  DEFENDANT PALENCIA:  Yes.

22                  THE COURT:  And did you sign that

23      agreement after reviewing it with your attorney?

24                  DEFENDANT CASTILLO:  Yes.

25                  DEFENDANT CAMACHO:  Yes.
```

1          DEFENDANT CARREON:  Yes.

2          DEFENDANT RODRIGUEZ:  Yes.

3          DEFENDANT CHAPA:  Yes.

4          DEFENDANT GARCIA:  Yes.

5          DEFENDANT PALENCIA:  Yes.

6          THE COURT:  Okay.  Mr. Palencia I

7   believe is the only one doing this with an interpreter,

8   correct?  I don't have anybody else.  Mr. Palencia, in

9   your case the agreement is in English.  You have been

10  proceeding here with an interpreter.  The proceedings

11  are being translated for you into the Spanish language.

12  Did you have the plea agreement translated for you into

13  the Spanish language before you signed it?

14          DEFENDANT PALENCIA:  Yes, ma'am.

15          THE COURT:  Now did each of you

16  understand that by entering into this plea agreement

17  you are bound, you bind, you promise to do what is here

18  in this plea agreement?

19          DEFENDANT CASTILLO:  Yes.

20          DEFENDANT CAMACHO:  Yes.

21          DEFENDANT CARREON:  Yes.

22          DEFENDANT RODRIGUEZ:  Yes.

23          DEFENDANT CHAPA:  Yes.

24          DEFENDANT GARCIA:  Yes.

25          DEFENDANT PALENCIA:  Yes.

1              THE COURT:   Okay.   Now part of what you

2    promised to do is you promised to give up your right to

3    an appeal, your right to a collateral attack.   Let me

4    explain to you what those things are, and then I'll ask

5    you whether this is what you wish to do.   Generally,

6    that is most of the time you have a right to appeal a

7    case such as this to a higher court, the Court of

8    Appeals, if you believe that I, that this court has

9    made some sort of mistake that would change your

10   conviction or change your sentence.   You can go to the

11   higher court.   You present your position to them.   You

12   explain to them through your lawyer and through the

13   documents what you think was done wrong.   If the higher

14   court agrees that a mistake was made, then most of the

15   time they send it back to this court to be corrected.

16           Sometimes it could change your conviction.   In

17   other words, if I find you guilty and the higher court

18   says, no, you shouldn't have been found guilty, then this

19   court has to find you not guilty.   Or if I sentence you

20   and the higher court says, no, he shouldn't have been

21   sentenced to that much time.   It should have been

22   different.   Then, again, I have to change the sentence.

23   That's a right that you generally have.   You don't have

24   to do anything special here in this court other than at

25   the right time file your notice of appeal.

1          The other thing that I refer to is what we call

2     a collateral attack sometimes referred to as 2255.  That

3     is a way by which you can also complain about your

4     conviction or your sentence directly to this court.  You

5     present your claim to this court.  You explain to this

6     court why you think that this court made a mistake that

7     should change your conviction or change your sentence.

8     And if this court agrees with you -- and this doesn't

9     mean that every kind of mistake, certain kinds of

10    mistakes only.  But if this court agrees that that kind

11    of mistake was made, again, it could mean that if this

12    court found you guilty, you wouldn't be found guilty.  If

13    the court sentenced you to particular sentence, that

14    sentence might have to be changed.

15          There's of course a lot of detail, and I have

16    explained it very generally.  But it's important that you

17    understand that you have those rights without having to

18    do anything other than at the appropriate time file the

19    right papers with this court or with the Court of

20    Appeals.  Do you each understand that those are rights

21    that you have?

22               DEFENDANT CASTILLO:  Yes.

23               DEFENDANT CAMACHO:  Yes.

24               DEFENDANT CARREON:  Yes.

25               DEFENDANT RODRIGUEZ:  Yes.

```
 1                     DEFENDANT CHAPA:  Yes.

 2                     DEFENDANT GARCIA:  Yes.

 3                     DEFENDANT PALENCIA:  Yes.

 4                     THE COURT:  If you give up those rights,

 5     that means that you cannot complain to the Court of

 6     Appeals.  You cannot complain back to this court.  If

 7     you give up those rights, and if I find you guilty and

 8     if I sentence you, that would be the end of your case.

 9     You would, you know, if convicted, you would be

10     convicted.  If sentenced, you would have to live with

11     your sentence until it was completed.  Do you each

12     understand that?

13                     DEFENDANT CASTILLO:  Yes.

14                     DEFENDANT CAMACHO:  Yes.

15                     DEFENDANT CARREON:  Yes.

16                     DEFENDANT RODRIGUEZ:  Yes.

17                     DEFENDANT CHAPA:  Yes.

18                     DEFENDANT GARCIA:  Yes.

19                     DEFENDANT PALENCIA:  Yes.

20                     THE COURT:  Okay.  In this case the

21     government has agreed that in exchange for your plea of

22     guilty and giving up the right to appeal and the right

23     to a collateral attack, they will make recommendations

24     to the court about certain points as they relate to the

25     guidelines that I explained a few minutes ago.  Okay.
```

```
1    But, again, it's important that you understand that

2    even if I don't follow the recommendation of the

3    government about what your sentence will be, if you

4    have given up your right to appeal and your right to a

5    collateral attack, you cannot complain about either the

6    conviction or the sentence.  Do you understand that?

7                   DEFENDANT CASTILLO:  Yes.

8                   DEFENDANT CAMACHO:  Yes.

9                   DEFENDANT CARREON:  Yes.

10                  DEFENDANT RODRIGUEZ:  Yes.

11                  DEFENDANT CHAPA:  Yes.

12                  DEFENDANT GARCIA:  Yes.

13                  DEFENDANT PALENCIA:  Yes.

14                  THE COURT:  And with this understanding,

15   do you each wish to give up the right to appeal and the

16   right to a collateral attack as I explained?

17                  DEFENDANT CASTILLO:  Yes, Your Honor.

18                  DEFENDANT CAMACHO:  Yes.

19                  DEFENDANT CARREON:  Yes.

20                  DEFENDANT RODRIGUEZ:  Yes.

21                  DEFENDANT CHAPA:  Yes.

22                  DEFENDANT GARCIA:  Yes.

23                  DEFENDANT PALENCIA:  Yes.

24                  THE COURT:  Okay.  Something that I

25   usually address early on, and I failed to address, that
```

1    is that each of you is represented here by counsel.

2    And it is important that you understand that you do

3    have the right to be represented by counsel throughout

4    these proceeding here, that includes in the beginning

5    of the case or all the way to the end of the case, even

6    if you cannot afford an attorney.  Do you each

7    understand that?

8                    DEFENDANT CASTILLO:  Yes, Your Honor.

9                    DEFENDANT CAMACHO:  Yes.

10                   DEFENDANT CARREON:  Yes.

11                   DEFENDANT RODRIGUEZ:  Yes.

12                   DEFENDANT CHAPA:  Yes.

13                   DEFENDANT GARCIA:  Yes.

14                   DEFENDANT PALENCIA:  Yes, ma'am.

15                   THE COURT:  Okay.  Is there anything

16   else of significance in the plea agreement, other than

17   the general terms that need to be addressed as to

18   each -- as to anyone of these defendants, Mr. Moreno,

19   that you can think of?

20                   MR. MORENO:  No, Your Honor.

21                   THE COURT:  As to any counsel, anything

22   that they can think of in the plea agreement other than

23   what I have covered already of the standard agreements?

24                   MR. REYES:  No, Your Honor.

25                   MR. FLORES:  No, Your Honor.

```
 1                    THE COURT:  Okay.  Then I'm close to the
 2     end of my questioning then.  Let me just ask a few more
 3     questions, okay.  I've covered all the questions to
 4     make sure that you each understand what you are doing
 5     here.  But, again, it is very important that you have a
 6     full understanding, so I don't usually do this, but
 7     this case being as complex as it is, I'll ask whether
 8     any one of the defendants here has any questions to the
 9     court about the things that I've covered or about your,
10     you know, agreement or about your plea or anything that
11     you feel like you have not understood, your lawyer has
12     not been able to answer for you.  Anything that you
13     want explained any further.
14                    DEFENDANT CASTILLO:  No, Your Honor.
15                    DEFENDANT CAMACHO:  No.
16                    DEFENDANT CARREON:  No.
17                    DEFENDANT RODRIGUEZ:  No.
18                    DEFENDANT CHAPA:  No.
19                    DEFENDANT GARCIA:  No.
20                    DEFENDANT PALENCIA:  No.
21                    THE COURT:  I got a no from everybody?
22     Okay.  All right.  Do you each wish to enter a plea of
23     guilty freely and voluntarily?
24                    DEFENDANT CASTILLO:  Yes, Your Honor.
25                    DEFENDANT CAMACHO:  Yes.
```

```
 1                    DEFENDANT CARREON:  Yes.

 2                    DEFENDANT RODRIGUEZ:  Yes.

 3                    DEFENDANT CHAPA:  Yes.

 4                    DEFENDANT GARCIA:  Yes.

 5                    DEFENDANT PALENCIA:  Yes, ma'am.

 6                    THE COURT:  Do you wish to do so because

 7    you are in fact guilty?

 8                    DEFENDANT CASTILLO:  Yes, Your Honor.

 9                    DEFENDANT CAMACHO:  Yes.

10                    DEFENDANT CARREON:  Yes.

11                    DEFENDANT RODRIGUEZ:  Yes.

12                    DEFENDANT CHAPA:  Yes.

13                    DEFENDANT GARCIA:  Yes.

14                    DEFENDANT PALENCIA:  Yes, ma'am.

15                    THE COURT:  Has anybody threatened you

16    or tried to force you or coerce you into entering a

17    plea of guilty?

18                    DEFENDANT CASTILLO:  No, Your Honor.

19                    DEFENDANT CAMACHO:  No.

20                    DEFENDANT CARREON:  No.

21                    DEFENDANT RODRIGUEZ:  No.

22                    DEFENDANT CHAPA:  No.

23                    DEFENDANT GARCIA:  No.

24                    DEFENDANT PALENCIA:  No.

25                    THE COURT:  Okay.  I'm going to go down
```

```
 1   the list and ask as to each one of you, and as to each

 2   one of the counts, how you plead, beginning with Mr.

 3   Castillo as to Count one, how do you plead, guilty or

 4   not guilty?

 5                   DEFENDANT CASTILLO:  Guilty.

 6                   THE COURT:  As to count two, guilty or

 7   not guilty?

 8                   DEFENDANT CASTILLO:  Guilty.

 9                   THE COURT:  Okay.  Mr. Camacho, as to

10   count 42, how do you plead guilty--?

11                   DEFENDANT CAMACHO:  Guilty.

12                   THE COURT:  Mr. Carreon, as to count 24,

13   how do you plead?

14                   DEFENDANT CARREON:  Guilty.

15                   THE COURT:  As to count 26?

16                   DEFENDANT CARREON:  Guilty.

17                   THE COURT:  Mr. Rodriguez, as to count

18   one, how do you plead?

19                   DEFENDANT RODRIGUEZ:  I plead guilty.

20                   THE COURT:  As to count two?

21                   DEFENDANT RODRIGUEZ:  I plead guilty.

22                   THE COURT:  Mr. Chapa, as to count 42?

23                   DEFENDANT CHAPA:  Guilty, Your Honor.

24                   THE COURT:  Mr. Garcia, as to count 24?

25                   DEFENDANT GARCIA:  Guilty, Your Honor.
```

```
 1                 THE COURT:  As to count 26?

 2                 DEFENDANT GARCIA:  Guilty, Your Honor.

 3                 THE COURT:  Mr. Palencia, as to count

 4    20?

 5                 DEFENDANT PALENCIA:  Guilty, ma'am.

 6                 THE COURT:  As to count 21?

 7                 DEFENDANT PALENCIA:  Guilty.

 8                 THE COURT:  Okay.  Now this is going to

 9    take a little bit of time, and this is where we're

10    going to go down separately and address each one of

11    you.  But let me -- let me kind of divert here a little

12    bit.

13                 (Other case addressed; after which the

14    following continued in this case:)

15                 We're going to group some of you here to deal

16    with some of this.  I'm going to begin a little bit

17    different order than I've been going to here first.

18    We're going to begin with Mr. Palencia.  Mr. Palencia,

19    I'm going to ask the government to state the facts that

20    support your plea of guilty, that is the government is

21    going to tell me what facts could be proven or they

22    believe could be proven if this case went to trial.

23                 Once the government finishes their

24    presentation, I'm going ask you whether there's anything

25    that you believe is not correct, so it's very important
```

1    that you listen very closely to what the government is

2    saying, because after the government tells me what they

3    think could be proven here, I want to hear from you

4    whether you agree or disagree that this is what could be

5    proven.  Based on what is presented to me, then I will

6    decide whether you are guilty or not guilty here.  Do you

7    understand that?

8                    DEFENDANT PALENCIA:  Yes, ma'am.

9                    THE COURT:  Okay.  Mr. Moreno, then

10   let's proceed as to Mr. Palencia.

11                   MR. MORENO:  Your Honor, do you want to

12   follow-up with the United States agreement with each

13   one of them after we go through the factual basis?

14                   THE COURT:  I'm sorry?

15                   MR. MORENO:  Our agreement, our

16   recommendations of what we're going to recommend to the

17   court.

18                   THE COURT:  And, actually, Mr. Palencia,

19   we're covering it as to both counts 20 and 21.  Do you

20   understand that?

21                   DEFENDANT PALENCIA:  Yes, ma'am.

22                   THE COURT:  Okay.  All right.

23                   MR. MORENO:  If this case was to proceed

24   to trial, the United States could prove each element of

25   the offense beyond a reasonable doubt the following

1  facts among other things would be offered to establish

2  the defendant's guilt:  That on January 25th, 2006,

3  Ernesto Carreon-Vasquez, a.k.a. "Nune" (hereinafter

4  Nune) contacted a fellow by the name of Valdez via push

5  to talk radio on a cellular phone.  The agents were

6  able to monitor some of Valdez's calls and learned that

7  Nune wanted Valdez to help him smuggle approximately

8  1,000 pounds of marijuana from the riverbanks near Pico

9  Road to an undisclosed stash location on January 26th,

10  2006.  Valdez was to scout the transportation area for

11  Nunez transporters.  Nune worked for Miguel

12  Trevino-Morales a.k.a. "40" recruiting scouts and

13  transporters to cross marijuana and cocaine across the

14  Rio Grande River.  Valdez was instructed by Nune to

15  drop off two transporters at Pico Road and help scout

16  the area.  Two vehicles were to be used to transport

17  marijuana from the river to the stash house.

18           On January 26th, 2006, DEA agents and

19  U.S. Border Patrol Special Response Team, set up

20  surveillance to cover the smuggling venture.  At

21  approximately 6:30 a.m. Valdez was contacted by

22  Ernesto Alejandro Estrada a.k.a. Pepe informing Valdez

23  that Estrada was going to acquire the location where

24  Valdez was to meet the two Scouts and drivers for the

25  smuggling operation.  Approximately an hour later,

1    Estrada contacted Valdez and asked him to pick up the

2    scouts at San Agustin Plaza.  Valdez was informed that

3    there had been a change of plan because only one scout

4    and one driver had shown up.  The driver later

5    identified as Arturo Palencia was operating a tan over

6    blue Chevrolet Suburban bearing Texas license plates

7    7JZ-R98.

8                     At approximately 8:40 a.m. Valdez

9    dropped off the scout, whose only been identified as

10   Flama, at the Pico Road and Mines Road intersection to

11   scout out the area.  At approximately 8:50 Valdez gave

12   the all clear signal to Palencia and Palencia proceeded

13   down Pico Road to pick up the marijuana from the

14   riverbanks.  Palencia then instructed valdez to follow

15   Palencia once they exited Pico Road and Valdez was to

16   pick up Flama.

17                     At approximately 9:13 a.m. the U.S.

18   border patrol, SRT Agents, observed several

19   unidentified males carrying large bundles of marijuana

20   to the Chevrolet Suburban that was parked at the

21   riverbanks at the end of Pico Road.  SRT Agents then

22   attempted to arrest Palencia and the unknown

23   individuals, but all of them fled across the river into

24   Mexico.  As the SRT Agents attempted to capture the

25   individuals swimming back across the river and secure

1    the marijuana bundles, SRT Agents observed gunshots

2    being fired in their direction from Mexico.

3              The U.S. border patrol agents seized

4    approximately 130.09 kilograms of marijuana from the

5    suburban abandoned by Palencia and the area around the

6    Suburban.  Webb County SO Deputies responded to the

7    call regarding the gunshots.  Surveillance was then

8    terminated at that point.

9              On a subsequent monitored push-to-talk

10   conversation, DEA Agents heard Nune tell Valdez that

11   his brother, Nune's brother, Juan Antonio

12   Carreon-Vasquez, had been the person who had been

13   firing across the river at the agents.

14             THE COURT:  Okay.  Mr. Palencia, is

15   there anything that Mr. Moreno stated that you believe

16   is not correct?

17             DEFENDANT PALENCIA:  No, ma'am.

18             THE COURT:  And, in fact, what he read

19   is part of what is set out in the plea agreement.  I

20   asked you earlier whether you had reviewed the plea

21   agreement and had it translated to you in Spanish.  You

22   signed the plea agreement, which, as I said, includes

23   the factual basis.  Did do you so because the factual

24   basis is what you believe it to be true and correct?

25             DEFENDANT PALENCIA:  Yes, ma'am.

```
 1              THE COURT:  All right.  Mr. Moreno.
 2              MR. MORENO:  And as part of our plea
 3    agreement, Your Honor, the government agrees to as to
 4    Mr. Palencia pleads guilty to Count 20 and 21 and
 5    continues to do so through the process until
 6    sentencing, that the government will dismiss any
 7    remaining counts of the indictment at the time of
 8    sentencing.  That at sentencing we will agree to
 9    recommend to the court that the defendant be held
10    accountable for more than 100 kilos but less than
11    400 kilos of marijuana for the purposes of calculating
12    his guideline score.
13              Also at the time of sentencing, we will not
14    oppose the anticipated request for a two-level reduction
15    for acceptance of responsibility.  And if he continues
16    with his plea of guilty, for doing so early, we will also
17    recommend to the court that he receive an additional
18    level downward for his acceptance -- for his early
19    acceptance of responsibility.
20              THE COURT:  All right.  Mr. Palencia,
21    the government has briefly stated the terms of the
22    agreement as far as their recommendations and the
23    dismissal of the remaining charges.  Is this what you
24    understand is -- of course, the plea agreement itself
25    is what controls here.  They've briefly summarized it
```

1    here.  But the plea agreement itself is what controls

2    here, as far as your agreement with the government.  Do

3    you also understand that?

4                    DEFENDANT PALENCIA:  Yes, ma'am.

5                    THE COURT:  Okay.  Then, Mr. Palencia,

6    based upon the presentation here, the court -- well,

7    actually, I think I'll do it at the end and address

8    everybody here together because otherwise I'll be

9    repeating myself several times.  Okay.  We'll come back

10   to you in a little bit.  Let's move on then to Castillo

11   and Rodriguez.

12                   Okay.  Mr. Castillo and Mr. Rodriguez, I'm

13   going to tell you the same thing that I covered with

14   Mr. Palencia, that is the government is going to set out

15   the facts that support the charges against you.  Listen

16   closely.  At the conclusion of the government's

17   presentation, I will ask you whether there is anything

18   that you believe is not correct.  Do you understand that?

19                   DEFENDANT CASTILLO:  Yes, ma'am.

20                   DEFENDANT RODRIGUEZ:  Yes.

21                   THE COURT:  Okay.  All right.  Mr.

22   Moreno.

23                   MR. MORENO:  As to Mr. Rodriguez and Mr.

24   Castillo, if this case were to proceed to trial, the

25   government would prove by legal and competent evidence

that Mr. Rodriguez and Mr. Castillo conspired together
and with other persons to possess with intent to
distribute more than 5 kilograms of cocaine, and
conspired with each other and with others to launder
the proceeds of the sales of those controlled
substances.

The government established that defendant
Castillo admitted to the agents that Castillo had begun
working for Miguel Trevino-Morales on or about March of
2007.  He further admitted that he transported cocaine
and currency for a man named Francisco Martinez a.k.a.
"Popo" also known as "Doc" who worked under the direction
of Trevino Morales.

According to Castillo, upon meeting Martinez,
Martinez sent Castillo approximately 500 kilos of cocaine
to Castillo's house.  Castillo would store the cocaine
and transfer it to Rodriguez and another individual known
only as "Bibis" for rewrapping prior to transporting the
cocaine to Dallas, Texas.  According to Castillo,
Castillo would pay Rodriguez approximately $300 for
rewrapping the cocaine bundles.

Castillo also admitted that he organized the
shipping of approximately 500 to 600 kilograms of cocaine
per week to Dallas, and that he personally on occasion
escorted some of the shipments of cocaine once they were

1   past the border patrol checkpoint.  Castillo stated that

2   he utilized El Conejo Bus Lines, Turimex Bus Lines, and

3   tractor-trailers to transport the cocaine shipments to

4   Dallas.  According to Castillo, the El Conejo bus driver

5   would stop at Las Asadas Restaurant on San Dario Avenue,

6   which is near Del Mar Boulevard to allow the passengers

7   some time to eat there.  And while the bus was there,

8   then Mr. Rodriguez and this other fellow by the name

9   "Bibis" would load suitcases that contained the cocaine

10  onto the bus.

11          Mr. Rodriguez and a fellow named "Bibis" would

12  escort the bus to Dallas, Texas, and they normally

13  utilized a black 2001 Nissan Xterra and Castillo utilized

14  a black 2006 Chevrolet Avalanche.  Once in a Dallas,

15  Rodriguez and "Bibis" would recover the suitcases with

16  the cocaine at the Shell station that was located across

17  from the El Conejo Bus Station.  Castillo would then

18  instruct Rodriguez and "Bibis" to deliver the cocaine to

19  a stash house in Irvine, Texas.  Castillo also admitted

20  that he would make approximately $400 profit per kilogram

21  of cocaine when he utilized the El Conejo Bus Lines.  He

22  admitted that -- Mr. Castillo admitted that they lost one

23  shipment of cocaine, approximately 160 kilograms of

24  cocaine from an El Conejo Bus in August of 2007.  Agents

25  were able to go back and check with border patrol and

1  confirm that a shipment of 166 kilograms of cocaine was

2  in fact seized from El Conejo Bus Line on August 12th,

3  2007.

4         According to Mr. Castillo, he also has

5  mentioned using Turimex bus lines, and he would instruct

6  Rodriguez and "Bibis" to drop off the cocaine at the

7  Turimex parking lot.  Rodriguez and "Bibis" would leave

8  the vehicle's keys in the vehicle containing the cocaine,

9  and leave the keys to the vehicle in the fuel door of the

10  vehicle.  An employee from Turimex would load the

11  suitcases and Castillo would escort the bus to Dallas.

12  In Dallas, Castillo again would get Rodriguez and "Bibis"

13  to acquire the cocaine and deliver it to the stash house.

14  According to Castillo, Castillo said he would make about

15  $300 per kilogram when Castillo utilized the Turimex bus

16  lines.  He also admitted that they lost one shipment of

17  cocaine from the Turimex bus lines, approximately 80

18  kilograms in August of 2007, two or three days after the

19  El Conejo seizure.  Again, the agents were able to

20  confirm that a shipment of 88 kilograms of cocaine was

21  seized from the Turimex bus line two days after the El

22  Conejo seizure on August 14, 2007.

23         According to Castillo, when tractor trailers

24  were used, Castillo would not escort the tractor trailers

25  to Dallas, but would travel the day before.  Once the

tractor trailer was near Dallas, Castillo would instruct
Rodriguez and "Bibis" to acquire the cocaine at a truck
stop that was located on mile marker 404.  The cocaine
was then delivered to a warehouse near the livestock fair
arena to a male identified only as "Guero".  Castillo
claimed that Castillo only made about $120.00 per
kilogram when the truck drivers were used.  Castillo,
with the help of Rodriguez and "Bibis" transported
cocaine to Dallas approximately until February 2008 when
he was stopped with a currency shipment.

          Castillo also admitted that he had transported
approximately 20 to 30 bulk-currency shipments from
Dallas to Laredo, Texas.  In Laredo, he would then
transfer the currency to a male identified only as "El
Dentista" who in turn would transport the currency to
Nuevo Laredo for Miguel Trevino-Morales.  On February 8,
2008, Castillo and Rodriguez were stopped by Webb County
Sheriff's Office Deputies on IH-35.  A search of their
vehicle resulted in the seizure of $870,535.00 in U.S.
currency.  Castillo admitted that the currency was drug
proceeds being transported from Dallas to Nuevo Laredo
Mexico.

          After his arrest in on May 2nd,
Rodriguez admitted to the agents that he had worked for
Castillo wrapping the marijuana and cocaine and that

1    Castillo paid Rodriguez $50 to $200 for wrapping the

2    marijuana and cocaine.  Rodriguez also stated that the

3    wrapping usually took place at Castillo's tattoo shop.

4    Rodriguez also provided agents a written statement

5    indicating his participation with Castillo.

6              THE COURT:  Okay.  Mr. Castillo and

7    Mr. Rodriguez, you've heard the government state the

8    facts that pertain to the charges against you.  Is

9    there anything that you believe is not correct?  Mr.

10   Castillo?

11             DEFENDANT CASTILLO:  No, Your Honor.

12             THE COURT:  Mr. Rodriguez.

13             DEFENDANT RODRIGUEZ:  No.

14             THE COURT:  Okay.  Each of you in your

15   plea agreement, you have it set out as a separate

16   document called the factual basis for the plea of

17   guilty.  Again, these documents -- is attached to the

18   plea agreement.  It has what appears to be your

19   signature.  Did you sign that document?  Mr. Castillo?

20             DEFENDANT CASTILLO:  Yes, ma'am.

21             THE COURT:  Mr. Rodriguez?

22             DEFENDANT RODRIGUEZ:  Yes, ma'am.

23             THE COURT:  Did you sign that document

24   because you believe the facts set out therein to be

25   true and correct?

1                  DEFENDANT CASTILLO:  Yes, ma'am.

2                  DEFENDANT RODRIGUEZ:  Yes, ma'am.

3                  THE COURT:  All right.  Okay.  The

4     agreements.

5                  MR. MORENO:  As to each of them, the

6     agreement is almost identical with the exception of the

7     last provision.  As to both defendants, in exchange for

8     their pleas of guilty to Count One and Two, the

9     government has agreed to dismiss any remaining counts

10    of indictment at the time of sentencing.  As to both,

11    at the time of sentencing, the government will

12    recommend to the court that they be held responsible or

13    accountable for more than 150 kilograms of cocaine for

14    purposes of calculating their guideline score.

15                  Also, at the time of sentencing the government

16    will recommend to the court that the court hold the

17    defendants accountable for the $870,535 for purposes of

18    calculating their base offense level for money laundering

19    under guidelines.

20                  At the time of sentencing, the government will

21    not oppose their anticipated request for two levels off

22    for acceptance of responsibility and the additional level

23    if they continue with their early plea.

24                  The only difference is as to Mr. Castillo, the

25    government will be recommending to the court that he

1    receive a three-level upward adjustment for his

2    supervisory role in the shipments of cocaine.  And in

3    Mr. Rodriguez's case the government is going to ask the

4    court to award the defendant a three-level downward

5    adjustment for his role somewhere between minor and

6    minimal role in the transactions, for just being their

7    wrapper basically for the shipments of marihuana and

8    cocaine.

9                  THE COURT:  Okay.  Again, Mr. Castillo

10   and Mr. Rodriguez, the government has summarized what

11   the agreement is, that is, again, set out in the plea

12   agreement itself.  This is only a summary.  But is this

13   what you understand to be your agreement with the

14   government.  Mr. Castillo?

15                 DEFENDANT CASTILLO:  Yes, Your Honor.

16                 THE COURT:  Mr. Rodriguez?

17                 DEFENDANT RODRIGUEZ:  Yes, Your Honor.

18                 THE COURT:  Again, it's important,

19   however, that you understand what controls here is the

20   written document that I've talked about, the plea

21   agreement, even though the government has summarized

22   here what they have agreed to recommend.  Do you

23   understand that?

24                 DEFENDANT CASTILLO:  Yes, ma'am.

25                 DEFENDANT RODRIGUEZ:  Yes, ma'am.

1          THE COURT:  All right.  Okay.  Then

2    let's move on to Mr. Garcia and Mr. Carreon-Ibarra.

3          MR. MORENO:  Okay.  If this case were to

4    proceed to trial, the government would prove each

5    element of the offense beyond a reasonable doubt and

6    the following facts, among others, would be offered to

7    establish the defendant's guilt:

8          Between approximately January 31st, 2006, and

9    February 19th, 2006, Miguel Trevino-Morales a.k.a. "40",

10   Reymundo Reyes, a.k.a. as "Comandante Mundo", Ernesto

11   Carreon-Vasquez, a.k.a. Nune, the defendant, Rene Garcia

12   a.k.a. "Rana", Andres Alfredo Hernandez, Jaime Miguel

13   Diaz De Leon, a.k.a. "Michael" and Eduardo

14   Carreon-Ibarra, a.k.a. "Negro", and a Juvenile, that

15   we've identified in the indictment as Juvenile #2, and

16   others, aiding and abetting each other, traveled or used

17   a facility in interstate or foreign commerce with the

18   intent to commit a crime of violence to further the

19   unlawful activity, that is, a business enterprise

20   involving controlled substances.

21         Between approximately February 16th and

22   February 19th, Miguel Trevino Morales, Reymundo Reyes,

23   Ernesto Carreon Vasquez, Rene Garcia, Andres Alfredo

24   Hernandez, Jaime Miguel Diaz De Leon, Eduardo Carreon-

25   Ibarra, and Juvenile #2, and others, aiding and abetting

each other, possessed at least one firearm in furtherance

of a crime of violence, that is, Interstate or Foreign

Travel or Aid of Racketeering as charged in Count 24 of

the indictment.

Telephone tolls indicate push-to-talk calls

were made between Diaz De Leon in the United States and

Trevino Morales in Mexico on January 31st 2006.  Tolls

also identified push-to-talk calls between Trevino and

Reyes beginning on January 31st, 2006.  Beginning on

February 1st, 2006, Diaz De Leon and Garcia also

contacted each other.  Diaz De Leon first contacted

Carreon-Ibarra in Mexico on February 1st, 2006 and

February 4th, 2006.  Hernandez and Diaz De Leon began

exchanging push-to-talk calls.  On the same date,

Carreon-Ibarra called both Diaz De Leon and Hernandez

from Mexico.

On or about February 5th, 2006, at the request

of Diaz De Leon, Hernandez and Garcia travel from Laredo,

Texas to Miguel Aleman, Mexico to meet with Trevino.

While Hernandez and Garcia were meeting with Trevino,

Diaz De Leon and Trevino called each other.  Trevino gave

Hernandez and Garcia $5,000 each to take back to Diaz De

Leon.  During the meeting, Trevino asked Hernandez and

Garcia if they knew several individuals that Trevino

wanted killed.  Trevino, Hernandez, and Garcia also

1    discussed the cocaine business during the meeting.  Later

2    that day, Carreon-Ibarra again called both Hernandez and

3    Diaz De Leon.  Hernandez and Garcia drove back to Laredo

4    and gave the money to Diaz De Leon.  Diaz De Leon paid

5    Hernandez and Garcia for bring the "expenses" to Diaz De

6    Leon.  Tolls also reflect that on February 6 and 7, 2006,

7    Carreon-Ibarra called Hernandez.  Hernandez in turn

8    called Diaz De Leon and Diaz De Leon then called Trevino.

9    Trevino also called Reyes on February 6th, 2006.

10          Carreon-Ibarra, Diaz De Leon, Trevino, and

11   Reyes continued to exchange calls on February 8th and

12   9th.  Diaz De Leon also called Garcia on February 9th and

13   Hernandez on February 10th.  On February 11, 2006,

14   Trevino, Diaz De Leon, Carreon-Ibarra, Reyes, Garcia, and

15   Hernandez again exchanged calls.  Garcia, Diaz De Leon,

16   Hernandez, and Trevino again called each other on

17   February 14th and 15th, 2006, including Hernandez and

18   Trevino calling each other directly.

19          On February 16, 2006, Diaz De Leon, Trevino,

20   Garcia, Hernandez again communicated with each other

21   through push-to-talk radio.  On the same day, DEA agents

22   who were monitoring push-to-talk calls of FNU LNU, a.k.a.

23   "Valdez" learned that Carreon-Vasquez wanted "Valdez" to

24   help Carreon-Vasquez obtain two .40 caliber pistols.

25   Carreon-Vasquez told "Valdez" that Carreon-Vasquez was

1  sending two hit-men to Laredo, Texas, the following day

2  to do a hit.  Carreon-Vasquez also wanted "Valdez" to

3  find a place where the "sicarios" could hide after the

4  hit.

5          On February 16, 2006, Diaz De Leon called Juan

6  Carlos Sanchez-Gaytan (Juvenile #2), as well as

7  Hernandez.  Diaz De Leon and Garcia brought the Juvenile

8  #2 and Carreon-Ibarra to the home of Hernandez.  Juvenile

9  #2 and Carreon-Ibarra were dirty and tired from crossing

10 to Laredo, Texas.  Juvenile #2 and Carreon-Ibarra

11 showered, ate, and rested at Hernandez's house.  Diaz De

12 Leon and Garcia purchased new clothes for Juvenile #2 and

13 Carreon-Ibarra.  Later that evening, Hernandez took

14 Juvenile 2 and Carreon-Ibarra to Cheers bar so that they

15 could meet up with Garcia and Diaz De Leon.  At Diaz De

16 Leon's direction, Garcia rented a room for Juvenile #2

17 and Carreon-Ibarra at the Cactus Courts Motel.

18         On February 17th, 2006, Diaz De Leon again

19 asked Garcia to get Juvenile #2 and Carreon-Ibarra a room

20 at a different motel because they didn't like the Cactus

21 Courts Motel.  Carreon-Vasquez called "Valdez" and gave

22 "Valdez" Juvenile 2's push-to-talk number so that

23 "Valdez" could coordinate with the two sicarios.

24 Carreon-Vasquez also asked "Valdez" to find a house that

25 the hit-squads could use in Laredo.  Garcia took Juvenile

1  #2 and Carreon-Ibarra to the El Cortez Motel and rented

2  two rooms in Garcia's name.  During the day,

3  Carreon-Vasquez and "Valdez" continued to coordinate the

4  delivery of the firearms to Carreon-Ibarra and Juvenile

5  #2 and the rental of a safe house.  DEA and the Laredo

6  Police Department set up surveillance at the motel to

7  monitor the activities of the assassins.  Garcia, De

8  Leon, and Juvenile #2 were in contact by telephone during

9  the day.  Carreon-Ibarra was also in telephonic contact

10 with Trevino.

11          On February 18th, 2006, "Valdez" inquired of

12 Carreon-Vasquez when "Valdez" would receive the money to

13 rent the safe houses.  Carreon-Vasquez told "Valdez" that

14 Trevino would make that decision.  When Valdez asked for

15 a number to call Trevino, Carreon-Vasquez told "Valdez"

16 that he'd have to get permission to give "Valdez" that

17 contact number.  Minutes later, Reyes called "Valdez" and

18 told "Valdez" that Reyes worked for Trevino and was

19 calling on Trevino's behalf.  Reyes and "Valdez"

20 discussed the amount of money that would be needed to

21 rent a safe house for approximately six months.  Reyes

22 asked "Valdez" to help taking care of Juvenile #2 and

23 Carreon-Ibarra.  During February 18th, 2006, Juvenile #2

24 also contacted "Valdez" numerous times requesting that

25 "Valdez" deliver crack to the motel, food, and condoms at

1    the motel.  Diaz De Leon remained in telephonic contact

2    with Juvenile #2, Garcia, and Trevino during the day.

3    Later during the day, at Diaz De Leon's request, Garcia

4    transported Juvenile #2 and Carreon-Ibarra to the H-E-B

5    on San Dario.  At the H-E-B parking lot, Juvenile #2 met

6    with an unknown male who delivered a black gym bag

7    containing firearms.  Garcia then transported Juvenile #2

8    and Carreon-Ibarra back to the motel and delivered the

9    gym bag with the firearms to Diaz De Leon.

10        Once Diaz De Leon confirmed the firearms were

11    there, Diaz De Leon had a female associate take Garcia to

12    the motel to deliver the firearms.  When Garcia delivered

13    the firearms, he learned that Carreon-Ibarra and Juvenile

14    #2 were in contact with an unknown female who was

15    relaying the location of the assassination target at a

16    local restaurant and bar.  Diaz De Leon also obtained a

17    Chevrolet Monte Carlo which was to be used as a getaway

18    car after the assassination and had it delivered to the

19    El Cortez Motel.  Carreon-Ibarra was in contact with

20    Carreon-Vasquez during the day and with Trevino during

21    the night.

22        During the late hours of February 18th,

23    2008, in the early morning hours of February 19th,

24    2006, "Valdez" spoke and met with Juvenile #2 and

25    Carreon-Ibarra at the El Cortez Motel.  Juvenile #2

1    asked "Valdez" to locate more ammunition and magazines

2    for their firearms and a driver for the getaway car.

3    Laredo Police Department then approached Rooms 602 and

4    603 and made contact with the assassins.  Juvenile #2

5    attempted to escape through a window, but was unable

6    to.  Both Carreon-Ibarra and Juvenile #2 were arrested

7    in Room 603.  Juvenile #2 was found in possession of

8    6.1 grams of cocaine.  Carreon-Ibarra was found in

9    possession of keys to rooms 602 and 603 and had an

10   outstanding federal warrant for control substances.

11            Both subjects were arrested and

12   transported to the Laredo Police Department.  A search

13   of Room 603 turned up a Glock, .40 caliber pistol,

14   serial number FCM759 under the bed of the mattress and

15   a Smith and Wesson, 9mm caliber pistol, serial number

16   TCL4868 hidden in the water tank of the toilet.  A

17   search of Room 602 revealed a fully automatic AR-15,

18   223 caliber machine gun and an obliterated serial

19   number and a MAK-90, 7.62X39mm caliber semi-automatic

20   assault rifle, serial number 91784 hidden under the

21   mattress.

22            At the Laredo Police Department,

23   Juvenile #2 and Carreon-Ibarra were interviewed.  While

24   they were being interviewed, police and DEA agents

25   obtained information contained in Juvenile #2 and

1    Carreon-Ibarra's cellphone.  During the videotaped

2    interviews, the cellphones were returned to

3    Carreon-Ibarra and Juvenile #2.  Carreon-Ibarra called

4    Carreon-Vasquez, "Valdez", Trevino, his mother, and his

5    girlfriend to tell them that they had been arrested.

6    Carreon-Ibarra tried to call Diaz De Leon and Garcia.

7    Both Juvenile #2 and Carreon-Ibarra then tried to

8    destroy the sim cards from their respective cellphones.

9            On March 8th, 2006, LPD detectives

10   detained Diaz De Leon on outstanding robbery warrants.

11   During a videotaped interview, Diaz De Leon admitted

12   that he knew Trevino, and that a couple of weeks before

13   the interview, Trevino had asked Diaz De Leon to help

14   with hits quads that Trevino was sending to Laredo,

15   Texas.  Diaz De Leon admitted that Trevino wanted Diaz

16   De Leon to help out by providing weapons, cars, and

17   identifying targets in Laredo.

18           On March 16th, 2006, LPD detectives

19   spoke to Garcia.  During a videotaped interview, Garcia

20   admitted his participation with Diaz De Leon,

21   Hernandez, Trevino, and helping Juvenile #2 and

22   Carreon-Ibarra while they were in Laredo to commit a

23   murder.  When Garcia was arrested on March 18th, 2008,

24   Garcia spoke to DEA Agents and again confirmed his

25   participation in the activities described above.

1    Garcia admitted that he was aware that Juvenile #2 and

2    Carreon-Ibarra were in Laredo to commit a murder and

3    that he had delivered the firearms to them at the El

4    Cortez Motel.  On March 22nd, 2006, LPD detectives

5    interviewed Hernandez.  During the videotaped

6    interview, Hernandez admitted that he participated with

7    Diaz De Leon and Garcia in the activities described

8    above.  Hernandez admitted traveling to Miguel Aleman

9    with Garcia to meet Trevino at Diaz De Leon's request.

10            Hernandez also admitted bringing back

11   money to Diaz De Leon from Trevino.  Hernandez told

12   detectives that during this meeting with Trevino,

13   Trevino told Diaz De Leon to "take care" of any

14   "Chapos" in the Laredo, Texas area.  Hernandez also

15   admitted that Juvenile #2 and Carreon-Ibarra had rested

16   and showered at his house when they first arrived in

17   Laredo.

18            THE COURT:  Okay.  Mr. Garcia and Mr.

19   Carreon-Ibarra, is there anything that the government

20   has stated that you believe is not correct?

21            DEFENDANT GARCIA:  No, Your Honor.

22            DEFENDANT CARREON:  No, Your Honor.

23            THE COURT:  Okay.  Again, each one of

24   you has signed a document called a factual basis for a

25   plea of guilty.  Well, the document has what appears to

1  be your signature.  Did you sign this document?

2              DEFENDANT GARCIA:  Yes, Your Honor.

3              DEFENDANT CARREON:  Yes, Your Honor.

4              THE COURT:  Did you sign it because you

5  believe that the facts set out there are true and

6  correct?

7              DEFENDANT GARCIA:  Yes, Your Honor.

8              DEFENDANT CARREON:  Yes, Your Honor.

9              THE COURT:  Okay.  The agreements as to

10 these two defendants?

11             MR. MORENO:  As to both, the government

12 will agree to dismiss the remaining counts of

13 indictment at the time of sentencing.  As to both the

14 government will not oppose their request for a

15 two-level downward adjustment for their acceptance of

16 responsibility and an additional point for their early

17 plea.

18         Then as to Mr. Garcia, in addition, the

19 government will recommend that the court -- let me see if

20 I get this right -- the government will recommend to the

21 court that the defendant be sentenced at the lower end of

22 the appropriate guideline scores.  And also that the

23 defendant be sentenced for the consecutive minimum

24 mandatory term of five years for the violation of

25 924(c)(A)(1)(A)(i), Count 26.

```
 1                    THE COURT:  Twenty-six.  Yes.

 2                    MR. MORENO:  I think those are the only

 3      differences, Your Honor.

 4                    THE COURT:  Okay.  Again, the government

 5      has summarized what their recommendations are. Is this

 6      what you understand your agreement with the government

 7      is?  And it's in very general terms, but the plea

 8      agreement is what controls here.  I want to make sure

 9      you understand that?

10                    DEFENDANT GARCIA:  Yes, Your Honor.

11                    DEFENDANT CARREON:  Yes, Your Honor.

12                    MR. FLORES:  Your Honor, Mr. Moreno had

13      indicated to us also a minor role as to Mr. Garcia.

14                    MR. MORENO:  I'm sorry, did I skip that?

15      Yes, Your Honor, that's in Section B of the agreement.

16                    THE COURT:  Okay.  All right.  And,

17      again, what he says here is a summary of what the

18      written plea agreement is.  The written plea agreement

19      is what controls.  It's important that you understand

20      that.  Do you understand that?

21                    DEFENDANT GARCIA:  Yes, Your Honor.

22                    DEFENDANT CARREON:  Yes, Your Honor.

23                    THE COURT:  Yes, okay.  We have

24      Mr. Camacho and Mr. Chapa left, but the court needs to

25      take a very short break.  If anybody needs to take a
```

1    break, take it, and come right back.

2              (Break.)

3              THE COURT:  All right.  Then are we

4    ready back to this -- 244.  Okay.  We're finishing up

5    with Mr. Camacho and Mr. Chapa.  Okay.  Mr. Camacho and

6    Mr. Chapa, again, the government is going to read the

7    facts.  I'll then ask you some questions.  All right.

8    Mr. Moreno.

9              MR. MORENO:  Again, if this case was to

10   proceed to trial, the government would prove the

11   elements of the offense beyond a reasonable doubt and

12   would offer the following facts among others to

13   establish the defendant's guilt:

14              On or about April 10th, 2006, Gabriel

15   Cardona-Ramirez was intercepted on his telephone speaking

16   with an unknown male.  He was going to deliver some

17   cocaine to the Cardona-Ramirez.  After picking up the

18   cocaine, agents observed Cardona-Ramirez return to the

19   safe house located at 9006 Orange Blossom Loop with the

20   cocaine.  On video surveillance set up at the safe house,

21   agents were able to observe Cardona-Ramirez, Roberto

22   Camacho, Gustavo Fabian Chapa, J.P. Ibarra, Juvenile #3,

23   and Juan Adolfo Ramos in the kitchen area weighing and

24   rewrapping the cocaine.  Both Chapa and Camacho helped

25   Cardona-Ramirez weigh and wrap the cocaine.  A little

1  over nine ounces were weighed out by Cardona-Ramirez and

2  the others.

3          Early in the morning of April 11th, 2006,

4  Camacho went by the safe house and picked up the cocaine

5  from Cardona-Ramirez.  Monitoring of Cardona-Ramirez's

6  cellphone calls established that Camacho and Chapa had

7  taken the cocaine to Dallas, Texas and were going to

8  deliver the cocaine to unknown individuals there and

9  return with $5,000 for Cardona-Ramirez.  On three

10  separate calls, Cardona-Ramirez was intercepted arguing

11  with Camacho over the weight of the cocaine that was

12  taken to Dallas.  In a separate call with Juvenile #2,

13  Cardona-Ramirez is intercepted telling Juvenile #2 that

14  Cardona-Ramirez had just sent 10 ounces to Dallas and

15  that Chapa had called back to say "that they had already

16  scored" and they were on their way back to Laredo, Texas.

17          THE COURT:  Okay.  Mr. Chapa and

18  Mr. Camacho, anything that the government stated that

19  you believe is not correct?

20          DEFENDANT CHAPA:  No, Your Honor.

21          DEFENDANT CAMACHO:  No, Your Honor.

22          THE COURT:  Okay.  Now in your case,

23  what the government stated is in part written into the

24  plea agreement itself.  I asked you earlier whether you

25  had signed that plea agreement.  You indicated to me

1    that you had.  Is part of the reason that you signed

2    that plea agreement, which reflects this factual basis,

3    because you believe these facts to be true and correct?

4                    DEFENDANT CHAPA:  Yes, Your Honor.

5                    DEFENDANT CAMACHO:  Yes, Your Honor.

6                    THE COURT:  Okay.  As to the agreement

7    as to Mr. Camacho and Mr. Chapa?

8                    MR. MORENO:  As to both them, Your

9    Honor, the government is going dismiss the remaining

10   counts at the time of sentencing, if they persist in

11   their plea.  We would recommend to the court that they

12   be held accountable for more than 200 grams, but less

13   than 300 grams of cocaine for purposes of calculating

14   their guideline score.

15                   We will not oppose their request for a

16   two-level adjustment for acceptance of responsibility and

17   an additional level for the early plea, and I believe

18   both of them, at least they're eligible for safety valve,

19   if they decide to take advantage of it.

20                   THE COURT:  Okay.

21                   MR. MORENO:  And if they do so, then we

22   would recommend the additional two-level downward

23   departure.

24                   THE COURT:  Okay.  All right.  The

25   government has stated in general terms their agreements

1    here.  Is this what you understand to be the agreement?

2              DEFENDANT CHAPA:  Yes, Your Honor.

3              DEFENDANT CAMACHO:  Yes, Your Honor.

4              THE COURT:  Again, however, it's very

5    important for you understand that the written plea

6    agreement that I have talked about on and off here is

7    what controls.  Mr. Moreno just kind of summarized

8    that.  It is a written plea agreement that controls.  I

9    asked you earlier whether you had reviewed that, and

10   you indicated you had, and you understood that was your

11   agreement; is that correct, as to each one of you?

12             DEFENDANT CHAPA:  Yes, Your Honor.

13             DEFENDANT CAMACHO:  Yes, Your Honor.

14             THE COURT:  Okay.  All right.  As to any

15   one of the defendants, now that we're at this stage, is

16   there anything that we've covered that you do not

17   understand.  Anything that we've covered that you

18   think, wait a minute, even though earlier I said that's

19   correct, now I realize it's not correct, or I need to

20   tell the court this.  Anything of that nature?

21             DEFENDANT CASTILLO:  No, Your Honor.

22             DEFENDANT CAMACHO:  No.

23             DEFENDANT CARREON:  No.

24             DEFENDANT RODRIGUEZ:  No.

25             DEFENDANT CHAPA:  No.

1              DEFENDANT GARCIA:  No.

2              DEFENDANT PALENCIA:  No.

3              THE COURT:  Very well then.  As to all

4    the defendants, the court first of all finds that each

5    of you is competent to enter a plea, that you each

6    understand the nature of the charges against you, that

7    there is in fact a factual basis for the plea of

8    guilty.  That you are entering a plea of guilty freely

9    and voluntarily.  And the court as to Raul Castillo

10   finds you guilty as charged in Counts One and Two of

11   the indictment.  As to Mr. Camacho, guilty as charged

12   in Count 42.

13              As to Mr. Carreon, guilty as charged in Counts

14   24 and 26.  As to Mr. Rodriguez, guilty as charged in

15   counts One and Two.  As to Mr. Chapa, guilty as charged

16   in Count 42.  As to Mr. Garcia, guilty as charged in

17   Count 24 and 26.  As to Mr. Palencia, guilty as charged

18   in Counts 21 and 20.

19              The court will set sentencing in this case for

20   November the 13th at 9:00 a.m. with a presentence

21   investigation to be done and a report to be completed by

22   September the 8th with objections to be filed 14 days

23   thereafter.  Anything further as to any one of these

24   defendants?

25              MR. MORENO:  No, Your Honor.

LETICIA O. RANGEL, CSR
1300 VICTORIA #3245
LAREDO, TEXAS 78040

1          MR. DOMINGUEZ:  No, Your Honor.

2          MR. GUTIERREZ:  No, Your Honor.

3          THE COURT:  All right.  Thank you very

4    much.  Then you may be excused.

5          (Adjournment.)

6                    CERTIFICATE

7          I, Leticia O. Rangel, Official Court Reporter,

8    certify that the foregoing is a correct transcript from the

9    record of the proceedings in the above-entitled matter.

10          WITNESS MY OFFICIAL HAND, this 2nd day of

11    March, 2011.

12

13                         /S/LETICIA RANGEL
                           Leticia O. Rangel
14                         CSR: 4767

15

16

17

18

19

20

21

22

23

24

25

LETICIA O. RANGEL, CSR
1300 VICTORIA #3245
LAREDO, TEXAS 78040